ERIE RAILROAD COMPANY v. CITY OF PASSAIC.

Argued June 2, 1909—Decided November 8, 1909.

1. Section 57 of the charter of the city of Passaic (*Pamph. L.* 1873, *pp.* 484, 507) authorizes the alteration of street lines only where the street is one already laid out.
2. A street delineated on a map made pursuant to section 23 of the amendment of the charter of the village of Passaic (*Pamph. L.* 1871, *pp.* 619, 638), which authorizes the council to prescribe and adopt the location of streets and sewers, is not a street laid out within the meaning of section 57 of the charter of the city of Passaic.
3. An ordinance of the city of Passaic which purports to vacate a part of a street and to open it on other lines but in fact merely alters the side lines cannot be sustained where it appears that the portion of the street to be altered has never in fact been laid out.

On *certiorari.*

Before Justices SWAYZE, TRENCHARD and MINTURN.

For the prosecutor, *Gilbert Collins* and *George S. Hobart.*

For the defendant, *Michael Dunn* and *Adrian D. Sullivan.*

The opinion of the court was delivered by

SWAYZE, J.　The ordinance brought up seeks to vacate Madison street between Central and Main avenues, in the city of Passaic, and to open it upon other lines in pursuance of law and the power conferred in section 57 of the city charter. *Pamph. L.* 1873, *p.* 507. The proposed change involves only the shifting of the lines of the street a few feet to the south.

Section 57 confers upon the council power "to lay out, open or vacate any street," and "to order and cause any street, road, highway or alley already laid out, or which shall hereafter be laid out, to be vacated, straightened, altered or widened." It is not contended by the city that this ordinance is an original laying out and opening of this section of the street. Such a

contention would expose the city to the argument that the council was without jurisdiction to act because of the lack of an application in writing signed by the owners of at least one-third of the lineal feet of land fronting on the proposed improvement. *Pamph. L.* 1875, *p.* 573, § 9. We think it clear that what the ordinance really seeks to do is to change the lines of an existing street. The language of the ordinance naturally leads to that view. The words "vacate" and "open on other lines" are only applicable to an already existing highway. Counsel for the city recognize this in their brief and take the position that Madison street has long been in existence. To establish this position, they rely upon a map made pursuant to the authority conferred by section 23 of the amendment to the village charter. *Pamph. L.* 1871, *p.* 638. The only question therefore which it is necessary for us to determine is whether the delineation of a street upon that map suffices to make an actual street. The act authorizes the council "to cause such surveys, maps and returns to be made as may be necessary to enable them to prescribe and adopt either for the whole or any part of said village the location of streets and sewers, or either, and the width and grade thereof hereafter to be opened or constructed therein." Provision is then made for recording the surveys, maps and returns in the village clerk's office, and "thereafter no street or sewer shall * * * be opened or constructed except in conformity therewith, as to location, width and grade." The power thus given is merely a power to prescribe and adopt the location of streets and sewers in advance of actual need, for the evident purpose of securing the future development of the village upon a consistent plan. It is not even as broad as the power given by the charter of Newark, which included a power to "lay out" streets. *Pamph. L.* 1857, *p.* 492. The distinction under that charter between laying out a street upon the map and opening it so as to make an actual street was pointed out by this court in *State, Grant, v. Newark,* 4 *Dutcher* 491, in Justice Vredenburgh's opinion (at *p.* 495), and in Justice Whelpley's (at *p.* 499). The distinction is an important one, for if the action of the council under section 23 was equivalent to the

creation of a street, it amounted to a taking of the property of the owner, immediately upon the filing of the maps, without any provision for compensation until such time as the city chose to open the street by proceedings under section 19 of the same act. *Pamph. L.* 1871, *p.* 632. This contention, if correct, would, in effect, take the property of the owners in the land covered by the prospective streets, many of which might never be opened, so that the owners would never be compensated. The statute was passed after the adoption of the fourteenth amendment to the federal constitution, and if it means what the city now claims, it not only contravenes the constitutional rights of the prosecutor under the federal constitution (*C. B. & Q. R. R.* v. *Chicago,* 166 *U. S.* 226), but his rights under our own constitution (article 1, *placitum* 16), which only permits the taking of land for highways without compensation until the legislature shall direct compensation to be made, as it has done in section 19 of the very act appealed to. *Simmons* v. *Passaic,* 13 *Vroom* 619. By thus evincing a design to require compensation for land taken for streets, and failing to provide compensation for the acts of the city authorities under section 23, the legislature has made that section ineffective as a method of taking the land for a street. *Mulligan* v. *Perth Amboy,* 23 *Id.* 132; *Paterson, &c., Railroad* v. *Nutley,* 43 *Id.* 123. No such construction of section 23 is necessary. It serves its purpose by providing a consistent scheme of urban development in advance of actual needs. Another construction would not comport with the fact that the legislature has coupled streets and sewers in section 23. It would be absurd to say that the location of sewers upon a map made actual sewers; it is equally inadmissible to contend that the location of streets on the same map, under the same statutory authority, makes actual streets. Nor can it be said that the making of the map was a dedication which the city might afterwards accept; the map is made by the city authorities themselves, and they are without right to dedicate land that belongs to others.

To go a step further: Section 57 authorizes the alteration of lines of streets only when they are already "laid out."

This language is not used in section 23 of the act of 1871; it is, however, used in section 19 of that act which in terms authorizes the council to "lay out" streets and provides for compensation to the landowner. The use of the words "lay out," in section 19, and the failure to use them in section 23, is convincing that the power to prescribe and adopt a location was meant by the legislature to be different and distinct from the power to lay out.

The ordinance finds no support in the city charter. It cannot be supported under the act of 1896 (*Pamph. L., p.* 42) nor under the act of 1901. *Pamph. L., p.* 76. Both acts limit the power to alter street lines to streets already laid out, and the arguments above stated are applicable. Moreover, this object is not expressed in the titles of either act. The title of the act of 1896 makes it relate only to the opening, regulating and accepting of streets, highways and alleys; and the title of the second adds only the word "vacate." Neither title refers to an alteration of lines.

The ordinance should be set aside, with costs.