## HARRISON et al. v. CITY OF PHILADELPHIA.

(District Court, E. D. Pennsylvania.   September 26, 1914.)

### No. 1175.

CONSTITUTIONAL LAW (§ 280*)—DUE PROCESS OF LAW—ADOPTING PLAN OF
STREETS—PENNSYLVANIA STATUTE.

Act Pa. Dec. 27, 1871 (P. L. 1872, p. 1390) § 3, and Act Pa. May 16, 1891 (P. L. p. 80) § 12, provide that the owner of property over which a street has been plotted by the city of Philadelphia in accordance with its adopted plan of streets cannot recover for damage to any building subsequently built within the lines of such plotted street, and the Supreme Court of the state has held such acts constitutional and valid. *Held*, that neither their enactment nor the plotting of a paper street projected over the lands of an owner constitute a taking of his property without due process of law, within the prohibition of the fourteenth constitutional amendment.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 877–890; Dec. Dig. § 280.*]

In Equity.   Suit by Theodore L. Harrison and the Philadelphia Trust, Safe Deposit & Insurance Company, executors and trustees under the will of Joseph Harrison, Jr., deceased, against the City of Philadelphia.   Decree for defendant.

Roberts, Montgomery & McKeehan, of Philadelphia, Pa., for plaintiffs.

Otto Wolff, Jr., Asst. City Sol., and Michael J. Ryan, City Sol., both of Philadelphia, Pa. (Edwin O. Lewis, Asst. City Sol., of Philadelphia, Pa., of counsel), for defendant.

DICKINSON, District Judge.   There is no dispute over the facts in this case, except possibly that of money damage and the amount. Formal special findings are filed herewith.   Such facts as are necessary to an understanding of the question involved appear in the course of its discussion and need not be now preliminated.   The general question involved may be most clearly presented thus:

1. The state of Pennsylvania, by acts of its General Assembly of December 27, 1871 (P. L. 1872, p. 1390, § 3), and May 16, 1891 (P. L. 1891, p. 75, § 12), made it the law of the state that property owners should recover no damages for buildings erected within the lines of plotted streets shown on the plan of streets of the city of Philadelphia.

2. The state also conferred by law upon said city the power, and indeed required it, to adopt a plan of city streets and to locate and ordain them to be plotted streets, which, when lawfully opened to public use and travel, should become city streets and public highways of that commonwealth.

3. The city adopted such a plan, and located and ordained a plotted or paper street as part of said plan over and on the lands of the plaintiffs, which street the city has not as yet opened to public use and travel.

4. No compensation has been paid, or secured to be paid, or offered to be paid, to the plaintiffs.

The question arising out of the facts thus stated is whether the state of Pennsylvania by so doing is depriving the plaintiffs of property without due process of law, within the prohibition of the fourteenth amendment to the Constitution of the United States.

The plaintiffs feel that they have (and they are justified in this), a money interest in the answer to this question of some moment. This pales into insignificance, however, compared to its momentous importance to the state of Pennsylvania and its municipalities, and to every state in the Union.

At the birth of the federal Union Pennsylvania was an independent sovereign state. As such it was the right of her people to adopt any Constitution they saw fit to adopt, to make laws in pursuance thereof, and to commit to her judiciary the power to interpret and declare their meaning in any controversy arising thereunder.

This case concerns only her own citizens as parties and the lands within her own borders as its subject-matter, and arises under her own Constitution and laws, the meaning of which is alone involved in its decision. If any power outside of Pennsylvania can determine such a cause between such parties, and impose its will upon her against her own, she is no longer sovereign in anything. She is not now sovereign in everything, but only because she willingly and gladly surrendered some of the attributes of sovereignty, or more properly sovereign control of some matters, for the sake of the advantage to her sister states and to herself from the federal Union in which she joined. This surrender was made by the states upon more than the assurance, it was made upon the condition, that they retain all the rights and powers of sovereign states, except those enumerated in the instrument by which that surrender was evidenced. One of the most important of sovereign rights which were sacrificed was involved in the act of confiding to the United States, through the federal judiciary, the right and power to determine what had thus been surrendered. If it is determined that the states have given up the right to declare the meaning of their own Constitutions in controversies between their own citizens and affecting their control of the soil within their own borders, their sovereignty, as already stated, is wholly gone. If this has been done, the surrender is to be found in the provisions of the Constitution of the United States. Surely he who asserts this must point to some words in that Constitution by which this surrender was made.

We are referred to the fourteenth amendment, and to the particular provision that no state shall "deprive any person of * * * property without due process of law." The historical purpose of that amendment is well known. To accomplish this the dual character of our citizenship is given constitutional recognition. Every person born or naturalized within the United States and subject to the jurisdiction thereof is declared to be, not only a citizen of the United States, but of the state in which he resides as well. If to further secure the general purposes of that amendment the states gave up the right to make or— what is the same thing in some of its aspects—to declare the meaning of their own laws, the price, immeasurably great as it is, must be paid.

Surely, however, such a tremendous concession must have been expressed, or at least appear by necessary implication. It is certainly not expressed, and we see no necessity to imply it. What is expressed is that no person shall be deprived of his property without due process of law. Any person so circumstanced, therefore, is within the protection of the words of this provision. Are these plaintiffs so circumstanced? We waive, or at least pass over, all other possible questions in order to meet this one squarely.

The plaintiffs are the owners of real estate within the limits of the city of Philadelphia. The city has in contemplation the future opening of public streets. To this end it has indicated their future location by adopting a plan. One of these streets, if opened, will pass through or over the premises of the plaintiffs. The laws of Pennsylvania provide that, when streets so laid out come to be opened, the property owner shall not be compensated for the value of any "buildings or other improvements" which he shall have erected within the lines of the plotted streets after such plotting, of which it is further provided that he shall have notice. The Constitution of Pennsylvania provides that:

"Private property shall not be taken, injured or destroyed without just compensation."

Pennsylvania is not behind any of her sister states, nor any state on earth, in the protection which she throws around private rights, personal or property. The city of Philadelphia has not taken the plaintiffs' property for street purposes, and holds out no offer of compensation until she does. The plaintiffs feel that the plotting of this street imposes a servitude upon their property and impairs their rights therein, in that its full use and therefore its value is in part destroyed. The practical hardship in cases of which this may be and doubtless is one must be admitted. There may, of course, be a property so located that the opening of streets through it will enhance the value of the remaining property beyond its former value as a whole. There are just as surely other cases in which the value is depreciated. There have been, and doubtless will be again, properties over the whole of which streets are plotted. The hardship may be present, and for the purposes of a ruling in this case must be admitted to exist here. Is there, however, any injustice in the legal sense? There is a legal justice, and there is what has been called abstract or natural justice. It is to be desired that they be synonymous. It is the purpose and the effort of every enlightened state to make them so.

These plaintiffs, it must be admitted, have been subjected to a hardship which may be said, although inaptly, to amount to an injustice. Have they, however, been deprived of their property without due process of law? The damage done them is through the impending exercise by the state of the power of eminent domain. The state of Pennsylvania has this power. No property right of the landowner is infringed by its exercise, because the law of Pennsylvania is that every property is held subject to the exercise of this power. It was thought by many, however, to be a hardship to take private property for public use without compensation. By the early Constitutions of the state

this right to compensation was secured. It then became a legal right, and its deprivation a legal wrong. Property might yet, however, be injured by public improvements, and compensation withheld without legal injustice. Many again thought this to be wrong, and the further right was secured to the property owner that his property should not be "taken, injured or destroyed" without compensation. This was not made a right of property in Pennsylvania, in the constitutional sense, until the adoption of the Constitution of 1874.

The right of the plaintiffs, if it exists at all, exists by virtue of some law of the state. They are citizens of Pennsylvania. Their property is within the borders and subject to the jurisdiction of that state. Their property rights must necessarily be determined by the laws of that state, because by no other power can laws affecting the right of property in that state be made, unless its sovereignty be denied. What, then, is the law of Pennsylvania on the subject? It is admittedly that the plaintiffs have no such right in their lands of which either the plotting of a street upon them, or the acts of assembly denying them compensation for buildings subsequently erected within the limits of the streets, can deprive them. This has been determined by the tribunals to which the power to declare what property rights in land are has been committed. It is sufficient to refer to In re Forbes Road, 70 Pa. 125, and Bush v. McKeesport, 166 Pa. 57, 30 Atl. 1023.

This settles the question. Of what avail is it that similar tribunals in some of the other states have declared the law of such states to be otherwise, and inferentially that it should be otherwise in Pennsylvania? Of what avail is it that the members of the federal judiciary should be of opinion that the courts of Pennsylvania might have ruled the question otherwise than they have? It is a known fact, because it could not well be expected to be otherwise, that there was the same difference of opinion in Pennsylvania as elsewhere as to the validity of acts of assembly, thus anticipating the exercise of the power of eminent domain and limiting the compensation to be allowed. Indeed, individual members of its Supreme Court are known to have expressed themselves as of opinion that the law might well have been declared to be otherwise than it has been declared to be. This, however, cannot change the law, or confer a property right which does not exist. Many laws in their application work hardships. The police powers of the states afford us many illustrations. Such hardships, however, do not reach the dignity of legal injustice. The evil here complained of is, moreover, not even real, or at least present. It is threatened only. It can be reached only by invoking the doctrine of quia timet.

If a case should arise in which buildings erected after a street had been plotted should be taken and compensation therefor was demanded, the right to compensation could be determined. If it were determined against the plaintiffs, could it be successfully urged that they had been deprived of their property, if the claim of property was based upon a right which did not exist? In such a case are the federal courts to be guided by what the law is, or what in their opinion it should be? This question has been already answered. It has been determined for

us both before and since the fourteenth amendment went into effect. Suydam v. Williamson, 65 U. S. (24 How.) 433, 16 L. Ed. 742; Eldredge v. Trezevant, 160 U. S. 460, 468, 16 Sup. Ct. 345, 40 L. Ed. 490.

Federal inquiry into state acts is not to determine whether the law of a state is what it might be, but whether violence has been attempted to the provisions of the Constitution of the United States. The real complaint of the plaintiffs is not that there has been a denial of a right, or that this right has not been determined in the due process of law, but that the Supreme Court of Pennsylvania erred in holding the plaintiffs to have no right to compensation. Moreover, the utmost ingenuity of counsel can devise no form of decree to meet the exigencies of an anticipated taking of property. No better illustration can be given of the futility of the attempt to have this right declared to exist and its deprivation found than the failure of counsel of the highest ability to formulate a decree which would effectuate the purpose.

To ask the question whether the courts can compel the city councils to condemn the plaintiffs' property or to open this street is to answer it. To put it in the alternative that the street must either be opened or the plan withdrawn is to decree that the city of Philadelphia cannot adopt a plan of a system of streets. The paper plotting of streets admittedly in itself hurts no one. It is the provision of the acts of assembly at which the ruling is asked to be directed.

To dismiss this bill, as has been suggested, on the ground that in the opinion of the court the acts of assembly, when a case arises, will be held to be invalid, is for the court to embark in the hazardous business of judicial insurance of future rulings. The only course left to us is simply to dismiss the bill, with costs; and this we accordingly do, and a formal decree to this effect may be submitted.

### Findings of Facts.

The court finds the following findings of facts:

1. The averments in the bill of complaint, as set forth in paragraphs 1 to 20, inclusive, and also 21, are found as stated in said paragraphs, respectively.

2. There is no act of assembly of the commonwealth of Pennsylvania which provides for the payment of, or requires security for, any damage which a property owner may sustain by reason of the laying out of a paper street on or over his land, in advance of such street being declared to be open for public use and travel.

3. The premises of the plaintiffs are opposite the City Hall and municipal buildings of the city of Philadelphia, and in close proximity to the terminal station of the Pennsylvania Railroad, and are situate within what may be termed the heart of the city. Property other than that included within the lines of the plotted street referred to in the bill in the vicinity of what is known as City Hall Square have been improved by the construction of modern buildings, and the lands of the plaintiffs, by reason of their location, are well adapted for a similar kind of improvement. All lands surrounding the City Hall

Square, including the property of the plaintiffs, have improved or increased in market value since the plotting of said street.

4. The plotted avenue or parkway referred to in the bill has been since 1904, and still remains, upon the confirmed plan of the city of Philadelphia. The said parkway is as plotted a proposed avenue extending from the City Hall where plaintiffs' property adjoins City Hall Square in a northwestward direction for more than one mile connecting with Fairmount Park, the principal public park in the city, and one which is much frequented by its inhabitants. No legal steps have been as yet taken by the city to open said parkway. The improvement, of which this parkway is part, is one which will entail the outlay of a very large sum of money in its completion. The improvement is one which was projected in good faith by the city, and which, so far as the future action of the city can now be determined, is one which will be carried out and completed when and as soon as, in the judgment of the city authorities, the improvement should be completed. The market value of the plaintiffs' property with the plotted street upon it is less than its market value would be if the plotted parkway existed alongside of, or in close proximity to, the plaintiffs' lands, instead of part thereof being within the lines of the plotted avenue.

5. No finding is made of the effect on market values of the plaintiffs' property with and without the said projected parkway.

6. So far as it is a question of fact, there is no statutory obligation or duty imposed upon the city of Philadelphia to take any part of the lands of the plaintiffs for street purposes, and no such obligation is imposed, to pay the plaintiffs any compensation for the act of the city in adopting a plan of streets, including a projected street over the said lands.

7. No finding is made as to the rental or rental value of the plaintiffs' premises at the time of the adoption of said plan of streets, nor of the assessment for tax purposes at different times.

### Conclusions of Law.

The court finds the following conclusions of law:

1. Neither the adoption of the acts of assembly, approved December 27, 1871, and May 16, 1891, respectively, nor of either of them, nor the adoption of said street plan, nor of the plotting of a paper street projected through the lands of the plaintiffs, constitute a taking of property without due process of law.

2. The said acts of assembly do not constitute a violation of the provisions of the Constitution of the United States, or of the fourteenth amendment thereto.

3. The plaintiffs are not entitled to the relief as prayed for in the prayers enumerated in said bill and paragraphs 1 to 6, both inclusive, or in any of them.

4. The defendant is entitled to a decree dismissing said bill.

5. The defendant is entitled to a decree for costs.