87 N.J. Super. 526 (1965)
210 A.2d 99
ROBERT THOMAS COCHRAN AND ALICE K. COCHRAN, PLAINTIFFS,
v.
PLANNING BOARD OF THE CITY OF SUMMIT (JOSEPH C. HAZEN, JR., JOSEPH R. COVIELLO, JOHN FARON, WILLIAM GILSON, EDWARD HOLMES, THERON L. MARSH, JAMES J. KANE, HENRY NEGUS, DAVID E. TRUCKSESS, JOHN WEIGANG) AND CITY OF SUMMIT, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 29, 1965.
*528 Mr. Joseph Ginsburg for plaintiffs.
Mr. Peter C. Triolo for defendants.
FELLER, J.S.C.
This is an action in lieu of prerogative writs challenging the adoption of a master plan by the Planning Board of the City of Summit and seeking to enjoin the city and its agencies, boards and officials from implementing the master plan in any way. In particular, plaintiffs object to that part of the plan which would permit an expansion of the Ciba Corporation's parking area and research and office space into the residential area which adjoins the rear of plaintiffs' property.
Plaintiffs are citizens, taxpayers and owners of lands located at 249 Kent Place Boulevard in Summit. Their property is adjacent and contiguous to property owned by the Ciba Corporation (hereinafter Ciba). Plaintiffs' premises and that portion of the Ciba tract in question are presently in the A-15 zoning district, which is limited to one-family residences with a minimum lot area of 15,000 square feet. Prior to 1958 the Ciba tract was in an A-10 zone, which was limited to one-family residences with a minimum lot area of 10,000 square feet. The tract is bordered on three sides by one-family residences and is presently subject to enforceable deed restrictions *529 which limit the use of the tract to the erection of one-family residences until 1975.
On December 9, 1963 the defendant planning board adopted a master plan for the city, which provided in part that the Ciba tract, namely, 63 1/2 acres in the A-15 zone, should be rezoned for parking areas and research and office building use. This rezoning is for the purpose of providing for the eventual expansion therein of Ciba's existing operations. The plan requires a 125-foot buffer zone, which would separate the rear line of plaintiffs' property from the proposed Ciba construction. This zone would contain trees, shrubs and a screen, all of them calculated to preserve the existing residential atmosphere of the area.
Plaintiffs claim that the adoption of the master plan is arbitrary, discriminatory, capricious, unreasonable and an abuse of the planning board's discretion; that it is illegal because it constitutes spot-zoning of the Ciba tract for the benefit of Ciba, and because it is contrary to the provisions of the Municipal Planning Act, N.J.S.A. 40:55-1.1 et seq.; that it was procedurally defective because it was adopted on improper notice, ten days' notice not having been given of the December 9, 1963 hearing at which the plan was adopted, as required by the act, and that the planning board was illegally constituted. Plaintiffs further contend that the master plan was an abuse of discretion in that it was contrary to the expressed wishes of the citizens of the city made known at the hearings thereon and prior thereto; was contrary to the purpose of the plan to preserve the already established pattern of the better single-family areas of Summit; was contrary to the general welfare and health of the citizens; was ultra vires the planning board's power, and did not conform to the character of the neighborhood.
Plaintiffs also contend that the master plan is confiscatory in that it destroys existing property values to the special damage of plaintiffs, in violation of N.J.S.A. 40:55-1.12, which requires that a master plan preserve property values previously established. The action of the board was allegedly based *530 on insufficient and incompetent facts and findings and on insufficient surveys and studies, in violation of N.J.S.A. 40:55-1.12. Plaintiffs claim that their personal and property rights have been violated in contravention of the New Jersey and Federal Constitutions. They also contend that the master plan, especially the section which deals with the Ciba tract, is invalid because of a conflict of interest on the part of two members of the planning board. The contention is that board chairman Hazen was the publisher of a magazine in which the Ciba Corporation advertised, and that board member Holmes was called by Ciba to investigate properties and their purchase in the area of the rezoning, and that he has done appraisal work for which he was paid and acted as broker for Ciba's house-buying personnel for which he received commissions; also, the fact that Holmes is presently managing properties for Ciba, after the adoption of the master plan, is alleged to be a further conflict of interest because it is in the nature of a reward.
The last contention raised by plaintiffs is that the planning board and the City of Summit are equitably estopped from the adoption and implementation of the master plan because of misleading representations by the city and its agencies and officials, and by the zoning ordinance, to the citizens and property owners and their reliance thereon.
In January 1962 the planning board began to consider the master plan with the aid of a planning consultant, Charles K. Agle. Agle was engaged pursuant to the adoption of an appropriate ordinance, and he and the city executed a contract on January 23, 1962. In April 1963 the planning board presented a preliminary master plan at a public meeting, properly advertised, to be held at the high school.
Defendants contend that the master plan was properly adopted at a meeting held on December 9, 1963; insist there was proper notice of the meeting, and that the meeting was a continuance of a previous one held on November 26, 1963. No minutes were kept of the latter meeting; however, a stenographic transcript was made. There is some controversy as *531 to whether that meeting was adjourned at the point where the transcript ends, or whether it was continued after the shorthand reporter left, with the understanding that it was to be continued on December 9. Defendants deny that the December 9 plan is different from the plan thereafter published by the city as the final master plan, and contend that the maps referred to in the draft adopted have been consolidated (two instead of three), but that the substance of the two maps finally produced is exactly the same as the three maps in the preliminary proposal.
Defendants also argue that there is no conflict of interest on the part of any members of the planning board and that there has been no destruction of property values. Moreover, they say that plaintiffs are premature in bringing their suit because the proposed master plan has not yet been enacted as an ordinance and, consequently, it is of no binding effect upon the city.
Defendants further contend that the plan was the result of a comprehensive study by the planning board which commenced in January 1962 and terminated on December 9, 1963, after an average of a meeting every two weeks with interested persons and citizens. They say that all the work and the final plan are in accordance with the requirements of N.J.S.A. 40:55-1.1 et seq.
A review of the evidence indicates that the following questions should be resolved: whether the planning board had the authority or power to adopt a master plan under the ordinance setting up the board; whether the plaintiffs' property has been harmed or damaged by the adoption of the plan or whether their suit is premature; whether the plan is arbitrary, capricious, unreasonable, or an abuse of discretion; whether, in its treatment of the Ciba tract, the plan is an example of spot-zoning; whether the plan was adopted by the planning board in accord with the appropriate statutes, and, finally, whether there was a conflict of interest on the part of several members of the planning board.

*532 I.
Initially, plaintiffs contend that the ordinance of March 16, 1954, which created the planning board of the City of Summit, did not give the board the power to prepare and adopt a master plan; furthermore, they contend that since no other ordinance granted this power to the board, the provisions of N.J.S.A. 40:55-1.3 have been violated by such preparation and adoption, and that the master plan should be set aside as ultra vires the power of the planning board. N.J.S.A. 40:55-1.3 provides in relevant part that:
"The governing body may by ordinance grant any of the powers exercisable by a planning board to a planning board continued by section twenty-seven of this act or to be created under section four of this act, but no particular power may be exercised until expressly granted by ordinance and until compliance is made with the conditions, standards, procedures and regulations enumerated in the sections describing such power." (Emphasis added)
The defendants rely in part on the passage of an ordinance by the Summit governing body on December 19, 1961, which made an appropriation for the engagement of special consultants for the preparation of a master plan. It is argued that this ordinance is sufficient to satisfy the demands of N.J.S.A. 40:55-1.3. The ordinance provided:
"Section 1. That pursuant to Chapter 48, P.L. 1956, the sum of $24,000 is hereby appropriated for the engagement of special consultants for the preparation and the preparation, of a master plan or plans, when required in order to conform to the planning laws of the State, and shall be deemed an emergency appropriation as defined and provide [sic] for in R.S. 40:50-12.
Such appropriation and/or the `special emergency notes' authorized to finance the appropriation shall be provided for in succeeding annual budgets by the inclusion of at least 1/5 of the amount authorized pursuant to this act.
Section 2. This ordinance shall take effect immediately after final passage and publication as provided by law."
If the above ordinance does not by implication grant the planning board power to prepare and adopt a master plan, *533 then the other sections of the Planning Act do. N.J.S.A. 40:55-1.10 provides in part as follows:
"The planning board may prepare, and after public hearing, adopt, and from time to time amend, a master plan for the physical development of the municipality which generally shall comprise land use, circulation, and a report presenting the objectives, assumptions, standards and principals [sic] which are embodied in the various interlocking portions of the master plan. The master plan shall be a composite of the one or more mapped and written proposals recommending the physical development of the municipality which the planning board shall have adopted either as a whole or severally after public hearing. Such master plan may include proposals for various stages in the future development of the municipality." (Emphasis added)
The first paragraph of N.J.S.A. 40:55-1.3, a later paragraph of which was cited above, reads:
"This act shall be construed most favorably to municipalities, its intention being to give all municipalities the fullest and most complete powers possible concerning the subject matter hereof."
See Kozesnik v. Montgomery Township, 24 N.J. 154 (1957). To hold as plaintiffs urge would be contrary to the intent of the Legislature as above expressed.
For the above reasons, and specifically because of the legislative expression in N.J.S.A. 40:55-1.10, this court is of the opinion that the Summit Planning Board had the power to enact a master plan and that such action by the board was not ultra vires.

II.
The second question is whether plaintiffs' property has been harmed or damaged by the adoption of the master plan and whether their suit is premature. If the action is premature, they have sustained no damage or harm to their property, and a determination of the procedural inadequacies and conflicts of interest alleged by plaintiffs would be unnecessary.
Plaintiffs request the court to declare the master plan null and void because it represents a taking of private property for *534 public use without just compensation. On the basis of this allegation, together with the allegation of their ownership of land in Summit, plaintiffs ask that the master plan be set aside because it violates their constitutional rights, is arbitrary, illegal and unreasonable, and constitutes spot-zoning.
Defendants contend that plaintiffs' failure to allege and prove injury to their property rights results in the presentation of legal questions which are premature and which do not present justiciable controversies. This court agrees that such allegations and proof of injury to private property rights are necessary before the requested relief may be considered and granted by this court. Plaintiffs have not demonstrated that degree of injury which would entitle them to relief.
The evidence and testimony of Agle, the expert planning consultant, reveal that if the proposed master plan were adopted as an ordinance by the city council, the resulting zoning ordinance would provide for a 125-foot buffer zone between plaintiffs' land and the Ciba property. The Ciba property would be devoted to a parking area and office and research buildings. The buildings would be limited to a maximum height of 68 feet. A seven-foot high screen on Ciba's property line would also be required. The result would make the buildings no more than one-third as high as the distance from them to the Ciba property line. This fact, together with the new trees in the 125-foot buffer zone, would adequately screen the visibility of the six-story-high buildings which Ciba would erect. Theoretically, then, plaintiffs' view would not be disturbed aesthetically.
If plaintiffs cannot demonstrate injury, then they may not obtain relief; if their claims are based upon assumed potential invasions of rights, then there are not enough to warrant judicial intervention. See Ashwander v. T.V.A., 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936).
The crux of this problem is clear when it is remembered that a master plan is of no force and effect until it is adopted by the governing body of the municipality. Thus, the *535 master plan under consideration in the City of Summit is of no effect until it is adopted by the municipal governing body.
The master plan represents at a given time the best judgment of the planning agency as to the proper course of action to be followed. In this stage the plan for community development remains flexible and is not binding, either on government or individual. See Webster, Urban Planning & Municipal Policy 265 (1958). A master plan is not a straitjacket delimiting the discretion of the legislative body, but only a guide for the city, Rhyne, Municipal Law, sec. 32-59, p. 977 (1957); furthermore, a master plan is nothing more than the easily changed instrumentality which will show a commission from day to day the progress it has made. Haar, Land Use Planning 693 (1959).
The mere adoption and recording of a master plan has no legal consequence. The plan is merely a declaration of policy and a disclosure of an intention which must thereafter be implemented by the adoption of various ordinances. Horack & Nolan, Land Use Controls 36 (1955).
In New Jersey the fact that a master plan adopted by a planning board has no legal consequences is substantiated, not only by the absence of statutory language to that effect, but also by the necessity of a municipality's adoption of the master plan by the governing body before the plan takes effect. See N.J.S.A. 40:55-1.13; Wollen v. Fort Lee, 27 N.J. 408, 424 (1958), where the court said that "the master plan is not conclusive on the governing body." Moreover, it is not mandatory for a township to create a planning board, and a governing body could assume directly the duties of a planning board. Jones v. Zoning Bd. of Adjustment of Long Beach Tp., 32 N.J. Super. 397, 406 (App. Div. 1954).
Professor Cunningham, in his "Controls of Land Use in New Jersey," 15 Rutg. L. Rev. 1, 19 (1960), said:
"* * * The statute does not require that the governing body shall accept the recommendation of the planning board nor does it require a vote of more than a majority of the governing body to adopt an official map * * * which is inconsistent with the planning board's recommendation. *536 It would thus appear that even after the planning board has adopted a master plan, the governing body is free to ignore the recommendation of the planning board based on the master plan when the governing body adopts or amends an official map." (Emphasis added)
It is clear that a master plan is only a plan, and that it requires legislative implementation before its proposals have binding effect and legal consequences. If the necessary legislative implementation is taken  and, of course, such implementation must be taken according to the applicable statutes  then a zoning ordinance and not a master plan would be before the court. Until appropriate municipal legislative action is taken, however, the municipality has only a dormant plan which differs from proposals that may be under consideration by any municipal board or citizen of the municipality in that it is comprehensive and has been reduced to printed form. Indeed, a master plan is not even a statutory prerequisite to zoning action. Kozesnik v. Montgomery Township, 24 N.J. 154, 165 (1957).
The issue here is whether a plan for municipal development, not yet implemented by the necessary legislative action, may be legally considered to deprive one of the enjoyment of his property, contrary to the United States and New Jersey Constitutions. The statutes providing for the adoption of a master plan were upheld as constitutional in Mansfield & Swett, Inc. v. West Orange, 120 N.J.L. 145 (Sup. Ct. 1938). The court, in the course of its opinion, said that the State possesses the inherent authority to resort, in the building and expansion of its community life, to such measures as may be necessary to secure the essential common material and moral needs. The public welfare is of prime importance, and the correlative restrictions upon individual rights, either of person or of property, are considered a negligible loss compared with the resultant advantages to the community as a whole. Municipal planning confined to the common need is inherent in the authority to create the municipality itself. It is as old as government itself; it is of the very essence of civilized *537 society. A comprehensive scheme of physical development is requisite to community efficiency and progress.
The court further said that the police power of the State may be delegated to its municipal subdivisions created for the administration of local self-government, to be exerted whenever necessary for the general good and welfare; and the right of property yields to the exercise of this reserve element of sovereignty. The principle is firmly established in our federal jurisprudence that injury to private property ensuing from governmental action in a proper sphere, reasonably taken for the public good, and for no other purpose, is not necessarily classable as a "taking" of such property within the intendment of the constitutional guaranties against the deprivation of property without due process of law, or the taking of private property for public use without compensation.
In Erie Railroad Co. v. Passaic, 79 N.J.L. 19 (Sup. Ct. 1909), the court said:
"* * * It would be absurd to say that the location of sewers upon a map made actual sewers. It is equally inadmissible to contend that the location of streets on the same map, under the same statutory authority, makes actual streets. Nor can it be said that the making of the map was a dedication which the city might afterwards accept. The map is made by the city authorities themselves, and they are without right to dedicate land that belongs to others." (at p. 21)
In State, Jones, Prosecutor, v. Carrogan, Collector, 36 N.J.L. 52 (Sup. Ct. 1872), a street was laid out by certain map and grade commissioners, whose only duty was to adopt a certain scheme for streets and avenues, which streets and avenues might or might not thereafter be opened and devoted to public use. Several years after such laying out, and before the ordinance opening the street was passed, the landowner erected buildings within the line of the street so laid out. The court held that while the opening of the street was thus in abeyance, the land owner was not deprived of the right to use his property in any lawful manner. To hold that he was deprived of his right to use his property would be, in substance, *538 to allow a taking of private property for public use without making just compensation therefor. The court decided that this did not happen.
Attention is also called to the following cases: Headly v. City of Rochester, 272 N.Y. 197, 5 N.E.2d 198 (Ct. App. 1936); Reopening of Philadelphia Parkway Between Twentieth and Twenty-second Street, 295 Pa. 538, 145 A. 600, 64 A.L.R. 542 (Sup. Ct. 1929); Windsor v. Whitney, 95 Conn. 357, 111 A. 354, 12 A.L.R. 669 (Sup. Ct. Err. 1920); Harrison v. City of Philadelphia, 217 F. 107 (E.D. Pa. 1914); Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270, 64 A.L.R. 542 (1897). These authorities indicate that the power of a municipality to plan for the future is part of the police power. The adoption of maps and/or reports, commonly called a "master plan," does not result in a "taking" of property in violation of our Federal and State Constitutions.
The plaintiffs have alleged that the adoption of the master plan destroys property values. To support this thesis they called as witnesses George Goldstein, who is a real estate appraiser and a consultant for the Federal Government and many public agencies, as well as for many of the largest industrial companies in the country, and Norman Lemcke, who is a retired vice-president of the Prudential Mortgage Loan Department. Goldstein testified that the adoption of the master plan had diminished adjacent property values up to 25%, as in the case of plaintiffs' home. Lemcke testified that before the plan he would have granted a 66% mortgage on the plaintiffs' house, but after its adoption he would only grant a 50% mortgage. He further testified that for financing purposes lending institutions take into account whether there is a master plan affecting the property, and the manner in which it is affected. Plaintiffs also rely upon N.J.S.A. 40:55-1.12, which requires, among other things, that a master plan be made with the general purpose of the maintenance of property values previously established. They also rely upon the case of State by State Highway Com'r v. Gorga, 26 N.J. 113 (1958), which is not in point for the reasons set out hereafter.
*539 The contentions of plaintiffs' two experts are disputed by several witnesses for the defense; but without considering the relative merits of the contentions raised by the conflicting views, this court feels that the testimony, taken in the light most favorable to plaintiffs, is at best mere conjecture. There has been no attempted sale by plaintiffs of their property, and the damages which they claim they will sustain if and when they do try to sell their property, is at this point a matter of speculation. In Stafford v. People, 144 Cal. App.2d 79, 300 P.2d 231 (Ct. App. 1956), plaintiff had an interest in three lots over which defendants allegedly proposed to locate a highway. The court held that no cause of action existed in favor of the plaintiff for the taking or damaging of his property. It said:
"According to the allegations of the complaint no property had been taken and none had been damaged. It was alleged only that the defendants intend to open a highway through the property. Not until his property is taken or damaged will he have any right to compensation.

* * * * * * * *
If and when plaintiff's property is taken or damaged he will be entitled to compensation in any amount found to be due him." (at 300 P.2d, pp. 233-234)
In Bakken v. Montana, 142 Mont. 166, 382 P.2d 550 (Sup. Ct. 1963), plaintiff alleged damages caused by the depreciation of his real property and personal hardship, by reason of the proposed construction of the interstate highway through the city and, more specifically, through his land. Plaintiff was a home building contractor and, because of the proposed highway, had been unable to sell, lease, develop, or finance his land since 1957. The court held that plaintiff had no cause of action for damages caused by depreciation of his realty and personal hardship by reason of proposed construction of the highway through the city; that his right to damages depended upon an actual physical taking of the property. The opinion then adopted the reasoning and result of Stafford v. People, supra. The Bakken case and the one at bar are similar *540 in that both involve speculative or conjectural damages. Until plaintiffs attempt to sell or mortgage their property, the testimony of their experts is a matter of speculation.
An interesting parallel may be drawn between the case at bar and Grosso v. Board of Adjustment of Millburn Township, 137 N.J.L. 630 (Sup. Ct. 1948). In that case the court said:
"The difference is between the appropriation of private property for public use and what is essentially the regulation of its use and enjoyment by the owner. If it falls short of a taking, the resultant injury is either damnum absque injuria, or, in the view of the law, the landowner is compensated for the immediate loss by his participation in the general benefits which the regulation is designed to secure." (at p. 632)
The court continued:
"It was plainly not open to the defendant municipality, in the exercise of the planning power, to dedicate the locus to highway uses on the `official map' and thereby deprive the landowner of all use thereof, without making compensation, until the municipality was prepared to lay out the street." (at p. 633)
The factor of importance in comparing that case to the present one is that in Grosso an "official map" was involved. An official map, as defined in N.J.S.A. 40:55-1.1 and N.J.S.A. 40:55-1.31, both of which are amendments of definitions in existence when the Grosso case was decided in 1948, is a map "adopted by ordinance of the governing body." Clearly, this language emphasizes once again the unofficial nature of a master plan which has not yet been adopted officially by the municipal governing body.
The Gorga case, supra, upon which plaintiffs further rely, is not in point because there the "taking" of property had already occurred. Moreover, in that case a proposed amendment to a zoning ordinance, and not an unadopted master plan, was involved.
It is the opinion of this court that plaintiffs' suit is premature. Not until their property is actually taken or damaged *541 will they be in a position to establish that its value will be destroyed or diminished.

III.
Plaintiffs question the soundness of the master plan on the ground that it is arbitrary, capricious and unreasonable. In view of the position taken by this court that plaintiffs are premature in their suit, it is not necessary to discuss this issue. However, the court feels that even if the reasonableness of the master plan were properly before it, the result would be the same. The action of a planning board is only an initial step; it is not even required by law, Kozesnik v. Montgomery Township, supra; it is only the manifestation of an advisory step in connection with quasi-judicial action the board may take in the future. As stated by Horack and Nolan, Land Use Controls 36 (1955):
"[The master plan] is merely a declaration of policy and a disclosure of an intention which must thereafter be implemented."
Since this master plan may never be adopted by the governing body of Summit, there is at present no justiciable controversy before the court. There may be such a controversy if and when the proposed plan is adopted by the governing body. Until implementation of the proposal is attempted, there can be no purpose in an adjudication by this court at this time.
If the court, for example, declared the master plan or any portion thereof arbitrary, capricious, and/or unreasonable, would a property owner be permitted to make use of his property other than in a manner now permitted or other than in a manner that would be permitted if the plan were sustained? Would the governing body be limited in the adoption of land use ordinances other than as they are at the moment if the plan were stricken by this court? The answers to these questions appear obvious.
This suit to test the reasonableness of the master plan is premature, and the issues involved are clearly not ready for *542 judicial determination. Furthermore, should the plaintiffs follow the normal administrative pattern of going first to the planning board and then, if necessary, to the governing body, they may very well be able to persuade these bodies to compromise their differences in connection with the master plan, in which case they would be able to avoid further litigation.

IV.
The plaintiffs contend that the Ciba tract is an example of spot-zoning. They rely upon the surrounding area and for some reason upon a statement made by Mr. Hazen in the master plan Progress report to the common council on September 11, 1962, wherein he said that the suggested rezoning of the Ciba tract behind the plaintiffs' land would not constitute spot-zoning because the rezoning covers land west of River Road as well as the Ciba property.
In the first place, the proposal in the master plan which the planning board adopted is not spot-zoning because the master plan has not yet been adopted as an ordinance by the common council. In the second place, assuming arguendo that this master plan can be equated to spot-zoning, in the determination as to whether a particular zoning change constitutes "spot-zoning" the use classifications surrounding the subject property must be examined. A definition of "spot zoning" is found in Bartlett v. Middletown Township, 51 N.J. Super. 239, 270 (App. Div. 1958), certif. denied 28 N.J. 37 (1958), in which the court said that spot-zoning has been defined as a process for singling out a small parcel of land for use classification totally different from that of the surrounding area for the benefit of the owner of such property and to the detriment of the other owners. In the case at bar the zoning which surrounds the Ciba property is not entirely residential. Consequently, the zoning in the proposed master plan extends one zone and decreases another. From a review of the proposed use classification it would appear that such classification is not "totally" different from that of the surrounding area. In *543 the case sub judice, no "island" is created. See Putney v. Township of Abington, 176 Pa. Super. 463, 108 A.2d 134 (Super. Ct. 1954). The case of Jones v. Zoning Board of Adjustment of Long Beach Township, 32 N.J. Super. 397, 404 (App. Div. 1954), held that "spot zoning" is the very antithesis of planned zoning. If, therefore, an ordinance is enacted in accordance with a comprehensive zoning plan, it is not "spot-zoning." Here, the master plan covered the entire City of Summit. There was no island created; rather, there was an extension of one section of the city which was already zoned for research and office buildings. These circumstances negate the contention that spot-zoning is present, and this court finds that it does not exist here.
[The court determined there was no procedural irregularity in the adoption of the master plan, and no conflict of interest on the part of the two named members of the planning board.]
Complaint dismissed and judgment for defendants.