102 N.J. Super. 497 (1968)
246 A.2d 170
SAUL BRAZER AND GLORIA BRAZER, HIS WIFE, PLAINTIFFS,
v.
BOROUGH OF MOUNTAINSIDE, A MUNICIPAL CORPORATION, AND THE PLANNING BOARD OF THE BOROUGH OF MOUNTAINSIDE, IN THE COUNTY OF UNION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 30, 1968.
*499 Mr. Irvine B. Johnstone, Jr. for plaintiffs (Messrs Johnstone & O'Dwyer, attorneys; Mr. Frank T. Swain, on the brief).
Mr. Charles J. Irwin for defendants.
WOOD, WM. FILLMORE, J.C.C. (temporarily assigned).
In this suit in lieu of prerogative writs plaintiffs challenge the ruling of the Mountainside Planning Board (hereinafter referred to as the board), which was affirmed by the borough council, requiring that they, as a condition for the approval of a subdivision of their property, provide a right of way across the property for the extension of a street known as Camelot Court. Defendants are the borough and the board.
*500 The case raises difficult statutory and constitutional questions. Defendants contend that their action is authorized by statute (N.J.S.A. 40:55:-1.20). Plaintiffs, on the other hand, deny the existence of any such authority and, in addition, argue that defendants' action was an unconstitutional taking of their property without compensation. I have found no judicial precedents precisely in point.
The property in question is known as lot 3, Block 3A on the tax map of the borough and consists of a tract fronting on the northerly side of U.S. Highway No. 22 and extending in a northerly direction a distance of approximately 500 feet. The tract is 200 feet wide at the highway and 140 feet wide at the rear. Plaintiffs' original application sought permission merely to divide the tract into two lots, one in the front to be designated at lot 3 and the other in the rear as lot 3A.
In the vicinity of plaintiffs' property Camelot Court is approximately parallel to the highway, both running in an easterly-westerly direction. As now laid out and open, Camelot Court terminates at the westerly side of proposed lot 3A. However, on the master plan previously adopted by the board that street is shown as extending in an easterly direction across plaintiffs' property and connecting with a street known as Long Meadow. The latter street is described by defendants in their trial memorandum as a "primary collector street functioning to collect traffic from numerous minor and secondary streets, including Camelot Court, Nottingham Way, Juniper Way and Pembrook Road."
At the initial hearing on the above application, held in May 1967, the board was apparently concerned with whether plaintiffs' intended use of the rear lot would interfere with the proposed extension of Camelot Court as shown on the master plan. The application was held in abeyance until the June meeting; in the meantime plaintiffs filed a supplemental application seeking to subdivide the rear lot itself into two building lots, to be designated as lots 3A and 3B, respectively. The latter application clearly indicated that *501 plaintiffs' intended use would frustrate the board's plan for the extension of Camelot Court. The board granted the original application at the June meeting but, in order to preserve its master plan, imposed the condition previously mentioned.
The supplemental application was held in abeyance. Consequently that application is not involved in this suit except to the extent that the facts disclosed thereby prompted the board to impose the condition upon the granting of the original application.
Before proceeding with the merits of this case I shall dispose of a procedural question raised by defendants. They contend that the suit is barred because it was not brought within the time prescribed by R.R. 4:88-15. That rule requires that prerogative writ proceedings to review a municipal governing body's action of the type here involved be commenced within 45 days from the publication of notice of that action or the mailing of the notice to the applicant, whichever is later.
The complaint alleged that the council's affirming resolution was adopted on September 19, 1967, and the answer admitted the truth of that allegation. The complaint was filed on November 2, 1967, only 44 days after the adoption date stated in the complaint. If that adoption date is correct, the suit is clearly within time. The question of the timeliness of the suit was first raised at the pretrial conference. The borough changed attorneys between the filing of the answer and the pretrial conference, and the new attorney expressed a different view as to when the resolution was adopted. His view is that the resolution was adopted on September 5, 1967; that notice of the adoption was sent to plaintiff's attorneys on September 14, and that the time for this suit expired 45 days from the last-mentioned date, or on October 29. For a variety of reasons this view is faulty.
In the first place, there never was a newspaper publication of the notice as contemplated by the rule. Secondly, the notice sent to the plaintiffs' attorneys on September 14, *502 as reasonably understood by them, was not that the resolution had been adopted but that it would be adopted on September 19. The notice stated:
"The governing body of the Borough of Mountainside has decided to affirm the decision of the Planning Board with regard to the subdivision application of your client, Saul Brazer.
Formal opinion and findings of fact will be stated at the public meeting, Tuesday, September 19th 1967."
Hardly anyone reading this notice would have gotten the idea that the borough council had already taken what was considered formal action on the application.
Finally and most significantly, the action of the council on September 5 was not in fact a legally effective adoption of the resolution since that action was taken at what is known as a caucus meeting, that is, an informal meeting to which the public is not admitted and of which no public record is made. It is axiomatic that municipal governing bodies may take official action only at public meetings. Cf. Anschelewitz v. Borough of Belmar, 2 N.J. 178 (1949). Decisions reached at a caucus are nothing more than gentlemen's agreements as to how the members will vote at a later public meeting.
The copy of the resolution offered in evidence by the plaintiffs bears a certification by the borough clerk that the resolution was adopted on September 19, 1967. However, the council minutes for that date, which were also offered in evidence by the plaintiffs, fail to indicate clearly that a vote was actually taken on the resolution on that date. The only reference to plaintiffs' appeal is a notation in the list of communications received by the council that a letter had been received from the borough attorney "enclosing decision of governing body Re: appeal of Saul Brazer pursuant to action taken by them on September 5, 1967 at its caucus meeting." The so-called decision was a draft of the resolution. The draft was incorporated in the minutes but there is no clear statement that a vote was taken thereon. While *503 the draft bears a notation of a "Recorded vote" for affirmance by all of the Council members, that notation evidently refers to action taken on September 5 since the notation is followed by a statement that the matter was decided on the latter date. It is also significant that the attorney's letter advised the council only that the resolution, if satisfactory, "should be read into the minutes of the public meeting on September 19, 1967." No instruction or suggestion was given that a vote should be taken.
Thus, while it is clear that the resolution was not formally adopted prior to September 19 and that, therefore, this suit was timely brought, it is not certain that the resolution was adopted on that date. It seems more likely that the resolution was never formally adopted. However, no significance is placed on the lack of formal adoption since it was the undoubtable intention of the council to affirm the action of the board. It is probable that the council intended its affirmance to become official or effective on September 19.
I return now to a consideration of the merits of the case. Plaintiffs concede that N.J.S.A. 40:55-1.20 gives the board broad authority to control, in the public interest, the size, grade and location of streets, including authority to require that streets in a proposed subdivision conform to proposals on the master plan. But they insist that this authority is limited to situations where the owners themselves wish to establish streets. Under their view, in other words, if they intended to establish streets within their proposed subdivision, the board could prescribe the size and location thereof but, since they have no desire to build any streets, the board and the borough are powerless even to require them to reserve rights of way other than by means of condemnation proceedings. I do not believe that the Legislature intended to ordain that kind of impotence. N.J.S.A. 40:55-1.20 reads in pertinent part:
"In acting upon plats the planning board shall require, among other conditions in the public interest, that the tract shall be adequately drained, and the streets shall be of sufficient width and *504 suitable grade and suitably located to accommodate the prospective traffic, to provide access for fire-fighting equipment to buildings and to be co-ordinated so as to compose a convenient system, conforming to the official map, or if there is no official map, relating properly to the existing street system. Where the planning board after hearing has adopted portions of the master plan with proposals regarding the street system within the proposed subdivision, the Board may require that the street shown conform in design and in width to the proposals shown on the master plan." (Emphasis added)
Plaintiffs argue that the reference in the last sentence to "the street shown" is only to such streets as may be voluntarily shown by the owners on their subdivision map.[1] This narrow construction would put planning boards at the mercy of individual owners and render municipal planning ineffective. Furthermore, such a construction would be contrary to the legislative mandate in N.J.S.A. 40:55-1.3, which provides:
"This act shall be construed most favorably to municipalities, its intention being to give all municipalities the fullest and most complete powers possible concerning the subject matter hereof."
The obvious intention of the Legislature was to give municipalities and their planning boards powers over planning that are as broad as possible under our constitutional system of government. See Levin v. Livingston Tp., 35 N.J. 500, 507 (1961).
*505 As previously indicated, plaintiffs contend that the action of this board exceeds constitutional limits. Before discussing the constitutional question I shall comment upon three cases cited by plaintiffs to support their view that defendants lacked statutory authority to impose the condition in question.
Plaintiffs rely most heavily upon Battaglia v. Wayne Tp. Planning Board, 98 N.J. Super. 194 (App. Div 1967). However, that case deals with a different set of facts and a different section of the Planning Act. These differences are decisive. In Battaglia plaintiff applied to the building inspector for a building permit rather than to the planning board for a subdivision. The application was referred to the planning board for site plan approval pursuant to an ordinance adopted under authority of N.J.S.A. 40:55-1.13. The powers authorized under this section are quite unlike those sanctioned by the subdivision sections, N.J.S.A. 40:55-1.14 to 1.25.
The planning board approved Battaglia's application but made its approval subject to the following five conditions: (1) a street on the north side of the property was to be improved; (2) a 50-foot easement was to be provided across the property from the above street to another street on the south side; (3) a performance bond was to be posted to cover the cost of improving a road across the property in the future; (4) a dedication was to be made to the township of the 50-foot right of way for the road in the event it was constructed, and (5) a bond was to be posted to cover the cost of improving the first mentioned street. The court held that the planning board was without authority to impose these conditions, but in doing so it expressly noted the difference between the site plan approval section and the subdivision sections of the statute. Said the court:
"The conditions are of the tenor customarily imposed by municipalities in granting subdivision approval. Nos. 2 and 4, which require easement and dedication, and 3 and 5, which provide for performance bonds, would appear to be valid under N.J.S.A. 40:55-1.14 *506 et seq. were they imposed as conditions to subdivision approval." (at p. 198)
Thus, instead of supporting plaintiffs' contention the court in Battaglia expressly recognized the contrary thesis.
Midtown Properties, Inc. v. Madison Tp., 68 N.J. Super. 197 (Law Div. 1961), affirmed per curiam, 78 N.J. Super. 471 (App. Div. 1963), the second case cited by plaintiffs in support of their thesis as to defendants' lack of statutory authority, is likewise unhelpful to plaintiffs' cause. That case involved, among other things, an attempt by the municipality to require plaintiff, as a condition for permission to subdivide its property, to pay money for the construction of schools. The court held that the municipality did not have power to do so. A crucial distinction between that case and the one at hand is that the former dealt with a condition that was unauthorized and the latter with a condition that is expressly permitted. Accord, West Park Ave., Inc. v. Ocean Tp., 48 N.J. 122 (1966). See N.J.S.A. 40:55-1.20 to 1.22.
The third case relied upon by plaintiffs to show lack of statutory authority is Longridge Builders, Inc. v. Planning Board of Princeton Tp., 92 N.J. Super. 402 (Law Div. 1966), affirmed 98 N.J. Super. 67 (App. Div. 1967). In that case the planning board required, as a condition to its approving a proposed subdivision, that plaintiff applicant pave a street along an existing right of way 361 feet beyond the border of plaintiffs' property, the right of way having previously been dedicated to the municipality by the owner of the property over which the right of way extended. The Law Division ordered the planning board to delete the condition, and the Appellate Division affirmed, both courts being of the view that the planning board had no statutory power to require off-site improvements, that is, improvements beyond the boundary of the subdivision, with the possible exception (in the Appellate Division's view) of a situation where there is no public street access to the subdivision. However, the Law Division expressly "conceded that constructing *507 roads within the subdivision, widening roads along the boundaries of subdivisions, installing storm drains and sewers within subdivisions and providing for drainage problems outside of a subdivision, are legitimate conditions that may be imposed upon a developer." (Emphasis in original). 92 N.J. Super., at p. 407. The Appellate Division recognized the existence of a power in planning boards to require the dedication as well as the improvement of streets "within the boundary lines of the development." 98 N.J. Super., at p. 73.
Furthermore, even the determination with respect to off-site improvements has now been rendered uncertain by the Supreme Court. On July 11, 1968 the Supreme Court affirmed the Appellate Division but declined to rest its own opinion on the reasoning of the two lower courts and expressly reserved decision as to the statutory power of planning boards to require off-site improvements, 52 N.J. 348 (1968).
Having reached the conclusion that the board has been granted by statute adequate authority to require a subdivider to dedicate a street right of way across his property, I come to the much more troublesome question of whether there is a constitutional barrier to the exercise of that authority under the circumstances of this case. To sustain their contention that such a barrier does exist, plaintiffs cited Grosso v. Board of Adjustment of Millburn Tp., 137 N.J.L. 630 (Sup. Ct. 1948); and Midtown Properties, Inc. v. Madison Tp. supra. Both are inapposite.
Grosso is not even remotely relevant since it involved neither a subdivision nor a reservation of a right of way. Instead of a right of way within a subdivision, with its potential for primary or substantial benefit to the remainder of the tract, the municipality confiscated the whole tract by amending the official map to place the entire property in the bed of the proposed street. Of course, that action was held to be unconstitutional.
Midtown is closer to the point but not close enough to be controlling. In addition to the above discussed holding that *508 a municipality lacked statutory authority to impose a condition that the subdivider pay money for school construction, the court ruled that such a condition would be unconstitutional. The factual distinction between Midtown and the instant case has already been noted. No great insight is needed to discern the difference between schools (which are equally for the benefit of all citizens in the community) and streets within a subdivision (which may be deemed primarily for the benefit of the subdivider or developer and of those who purchase homes from him). Moreover, here also the rulings of the Law and Appellate Divisions of the Superior Court have had some of their strength sapped by a later opinion of the Supreme Court, this time in an entirely different case. See West Park Ave., Inc. v. Ocean Tp., supra, 48 N.J., at pp. 125-127, where the Supreme Court held that the Legislature had not given a municipality power to exact from a developer, for the benefit of the board of education, a payment of $300 for each house built for sale but at the same time emphasized that it was not the court's "purpose to prejudge the constitutional power of the Legislature to authorize municipalities to impose charges such as the one here involved." See also Heyman & Gilhool, "The Constitutionality of Imposing Increased Community Costs On New Suburban Residents Through Subdivision Exactions", 73 Yale L.J. 1119, 1138-1141 (1964), where the validity of the Midtown constitutional doctrine was specifically questioned.
While the ultimate statutory and constitutional boundaries of a planning board's power to impose conditions in connection with subdivision approval have not yet been judicially established, it is clear that the power to require dedication and improvement of streets within a subdivision is well within those boundaries. That is the power exercised by the board in the instant case.
The rationale for the grant of that power was indicated by the Supreme Court in West Park Ave., Inc. v. Ocean Tp., supra, at p. 126. Said the court:
*509 "Thus the Legislature authorized the municipality to require a developer to install improvements which may be said to benefit peculiarly the land being developed. As to such improvements, it may be noted that if they were made by the municipality itself, it would be consistent with our general statutory thesis to recover the cost by special assessment upon the properties benefited. Hence the dollar burden upon the property is not significantly different whether the developer finances the improvement or pays for it after it is installed by the municipality. Moreover, when the developer finances the improvements, the initiative to go ahead remains with him, whereas if the municipality had to make the investment, it might not share the developer's optimism as to sales and might decline to act on that account."
The policy consideration which caused the Legislature to grant authority to municipalities to require a land developer to dedicate streets and install improvements in connection with his development, namely, that the streets and improvements will peculiarly benefit the land being developed, is also the reason the grant has been deemed to be constitutional. It would be unconstitutional to require a developer to provide streets, improvements or services in connection with the development of his land unless the land is to receive some special benefit therefrom or the development has some special relationship thereto. The burden imposed upon the developer must have a reasonable relationship to the benefit conferred upon the land or to the needs created by the development. Lake Intervale Homes, Inc. v. Parsippany-Troy Hills Tp., 28 N.J. 423 (1958); Longridge Builders, Inc. v. Planning Board of Princeton Tp. (Supreme Court opinion), supra. See Cunningham, "Control of Land Use in New Jersey under the 1953 Planning Statutes," 15 Rutgers L. Rev. 1, 37-45 (1960); Heyman & Gilhool, op. cit.
This brings me to the question of whether plaintiffs' property would receive special benefit from the proposed extension of Camelot Court. Plaintiffs stated during oral argument, and defendants apparently agreed, that the proposed extension is not necessary in order for them to utilize their property in the manner intended. From this premise they *510 argued that their property would receive no benefit from the extension. Although I expressed some doubt as to whether it would be possible to create out of proposed lot 3A two building lots that would comply with what I understood to be the 100-foot frontage requirement of the Mountainside zoning ordinance (as plaintiffs by their supplemental application sought to do), I now, at least for the purpose of this case, accept plaintiffs' statement as true. However, it does not follow that plaintiffs will receive no benefit from the extension. On the contrary, in this State it has always been an accepted principle that owners of property abutting on a street receive special benefits from the street and from improvements thereto. This principle is the basis for the widespread practice of imposing special assessments on abutting property owners to pay the cost of streets and improvements.
Indeed, the plaintiffs will derive special benefit from the entire street, including that portion already laid out and open, not merely from the area adjacent to their property. The requirement that plaintffs reserve a right of way within their property for the proposed extension is the method chosen by defendants to obtain from plaintiffs their proportionate share of the cost of the street.
It cannot be said that the requirement was unreasonable or that it forced plaintiffs to bear a disproportionate share of the street cost. On the contrary, in comparison with the owner of the subdivision adjacent to plaintiffs' property on the westerly side, plaintiffs received a substantial advantage. It appears from a stipulation submitted by the parties in response to a request by me for additional information that in connection with the creation of the adjacent subdivision the owner thereof provided not only the right of way to the portion of Camelot Court that is now laid out and open but also the improvements thereto. The land to the east of plaintiffs' tract has not yet been subdivided; but one may reasonably assume that when application is made for subdivision thereof, defendants will require that the owners reserve a right of way across their property so that Camelot *511 Court and Long Meadow may be connected in accordance with the master plan.
Plaintiffs recently raised another issue. In a supplemental memorandum received just four days ago plaintiffs alleged that the borough council has not adopted the master plan and contended that the master plan has no force and effect until it is adopted by the council, citing Cochran v. Planning Board of City of Summit, 87 N.J. Super. 526 (Law Div. 1965). This memorandum was received over two months after the hearing before me and when I had almost finished the final draft of this opinion. Hence the memorandum could reasonably be rejected as being out of time. An even more serious procedural fault is that this issue was not raised before the board or the council and was not set forth in the pretrial order. However, in view of the importance of this case to the public as well as to the parties, I have decided to consider the issue on its merits.
Plaintiffs relied upon the following statement from Cochran:
"The mere adoption and recording of a master plan has no legal consequence. The plan is merely a declaration of policy and a disclosure of an intention which must thereafter be implemented by the adoption of various ordinances." (at p. 535)
Since this issue was not raised below, the record does not contain sufficient information for me to make a determination as to whether or to what extent the master plan has been adopted by ordinance. However, such a determination is not necessary for a resolution of this case.
The quoted statement from Cochran must be read in the context of that case, where the question was whether the mere adoption of the master plan, without more, damaged plaintiffs' property enough to warrant their judicial attack upon the plan. The statement has no relevance to the instant case. Certainly the statement cannot be interpreted to mean that the adoption of a master plan does not have the consequence of vesting the planning board with the authority *512 or powers specified in N.J.S.A. 40:55-1.20, previously discussed.
Accordingly judgment will be entered in favor of defendants.
NOTES
[1] In this connection it is significant that article VIII, section 1 of the land subdivision ordinance of Mountainside requires that proposed major streets and thoroughfares be shown on the subdivision plat substantially as they are shown on the master plan map. That section reads:

"The subdivision plat shall conform to the design standards that will encourage good development patterns within the borough. Major streets and thoroughfares, or parts thereof, designated as existing or proposed on the Master Plan map, where they lie within the boundaries of the plat should be shown on the plat substantially as they are shown on the Master Plan map, or official map, so as to conform to the intent and purpose thereof."