PATSY GROSSO, PROSECUTOR, v. BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MILLBURN, IN THE COUNTY OF ESSEX, AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MILLBURN, DEFENDANTS.

Argued May 4, 1948—Decided September 10, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutor, *Harry Silverstein.*

For the defendants, *Reynier J. Wortendyke, Jr.*

The opinion of the court was delivered by

HEHER, J. The defendant Board of Adjustment denied an application made ·by prosecutor for a variance from the terms of the local zoning regulations to permit the use of his lands numbered 16-18 Holmes Street in Millburn, situate in a single-family residence zone, as an automobile showroom

and service garage, and for leave to erect a suitable structure thereon.

The *locus,* recently acquired from the Delaware, Lackawanna and Western Railroad Company, is a rectangular plot fronting 57 feet on Holmes Street and extending back along the railroad right of way a distance of approximately 135 feet. Immediately adjoining the plot to the north, there is an embankment whereon is located the railroad's main line, the roadbed being about 15 feet above street grade.

The application for the variance was made on February 12th, 1947. On the ensuing March 7th, at the instance of the local planning board, the Board of Adjustment continued the hearing of the application to March 28th, following; and there were continuances from time to time, one at the instance of the applicant, until September 12th, 1947, when the application was denied. No hearing was afforded prosecutor. It is stipulated that "the matter was placed on the calendar" for this meeting "without notice" to prosecutor; that by an ordinance adopted on August 4th, 1947, the pre-existing "official map" of the township "was changed by showing an extension of Essex Street in a general easterly direction from its present terminus through and wholly occupying the lot or parcel of land" in question, "to afford a traffic by-pass of the intersection of Millburn Avenue and Main Street;" and that the denial of the application was based on this amendment of the official map which "placed the entire property * * * in the bed of the proposed street."

City or town planning is a constitutional concept. *R. S.* 40:55–1, *et seq.,* has in view the physical development of the municipality "to conserve and promote the public health, safety, morals and general welfare." *Mansfield & Swelt, Inc.,* v. *West Orange,* 120 *N. J. L.* 145. Municipal planning, in a word, is the accommodation, through unity in construction, of the variant interests seeking expression in the local physical life to the interest of the community as a social unit. Planning is a science and an art concerned with land economics and land policies in terms of social and economic betterment. The control essential to planning is exercised through government ownership or regulation of the use of

the *locus*. But the governmental regulatory power has its limits. The case of *Mansfield & Swett, Inc.,* v. *West Orange,* cited *supra,* offers an example of legitimate regulation under the police power.

It has been said that it is much easier to perceive the existence and source of this police power than to mark its boundaries or prescribe limits to its exercise. *Slaughter-House Cases,* 16 *Wall.* 36; 21 *L. Ed.* 394; *Eubank* v. *Richmond,* 226 *U. S.* 148; 33 *S. Ct.* 76; 57 *L. Ed.* 156; *Noble State Bank* v. *Haskell,* 219 *U. S.* 104; 31 *S. Ct.* 186; 55 *L. Ed.* 112; *Euclid* v. *Ambler Realty Co.,* 272 *U. S.* 365; 47 *S. Ct.* 114; 71 *L. Ed.* 303. The power is broad and comprehensive; but it may not be invoked to secure what is in essence the taking of lands, for the taking of private property for public use without just compensation is forbidden by the State Constitution (*Constitution* 1844, *article I,* ¶¶ 1, 16; *Constitution* 1947, *article I,* ¶ 1.20), and the due process clause of the Fourteenth Amendment of the Federal Constitution as well, and planning in the exercise of the police power is subject to these constitutional property guaranties. *Southern Railroad Co.* v. *Virginia,* 290 *U. S.* 190; 54 *S. Ct.* 148; 78 *L. Ed.* 260. Or, perhaps, it is more precise to say that the powers do not overlap. The due process and the kindred protective property clauses and the police power operate independently, each within its own sphere. The former constitute a limitation upon the latter, in that they guard against arbitrary action. *Nashville, C. & St. L. R. Co.* v. *Walters,* 294 *U. S.* 405; 55 *S. Ct.* 486; 79 *L. Ed.* 949. The difference is between the appropriation of private property for public use and what is essentially the regulation of its use and enjoyment by the owner. If it falls short of a taking, the resultant injury is either *damnum absque injuria,* or, in the view of the law, the landowner is compensated for the immediate loss by his participation in the general benefits which the regulation is designed to secure. *The American Print Works* v. *Lawrence,* 23 *N. J. L.* 590; *New Orleans Public Service* v. *New Orleans,* 281 *U. S.* 682; 50 *S. Ct.* 449; 74 *L. Ed.* 1115. The problem is to draw the line between constitutional regu-

lation and the invasion of the natural right of private property.

This right of private property consists in the right to use and enjoy it, unless the right of immediate possession is vested in another. But there is no difficulty in classifying this case. Lands may not be taken for highway use, presently or *in futuro*, without just compensation. Apart from the cited constitutional limitations, article IV, section VI, paragraph 3 of the subject, Mr. Justice Holmes said: "The rights of the public in a street purchased or laid out by eminent domain are those that it has paid for. If in any case its representatives have been so shortsighted as to acquire only surface rights, without the right of support, we see no more authority for supplying the latter without compensation than there was for taking the right of way in the first place, and refusing to pay for it because the public wanted it very much. * * * The general rule, at least, is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. * * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. As we already have said, this is a question of degree—and therefore cannot be disposed of by general propositions." *Pennsylvania Coal Co.* v. *Mahon,* 260 *U. S.* 393; 43 *S. Ct.* 158; 67 *L. Ed.* 322.

It was plainly not open to the defendant municipality, in the exercise of the planning power, to dedicate the *locus* to highway uses on the "official map" and thereby deprive the landowner of all use thereof, without making compensation, until the municipality was prepared to lay out the street. That would constitute a palpable deprivation of the property without due process of law. The amendment of the ordinance does not purport to be the exercise of the power of eminent domain. Rather it was deemed to be a valid regulation under the police power. The Board of Adjustment erroneously concluded that the ordinance served to deprive prosecutor of the use of his land. Such interference with the landowner's exclusive right to the possession, use and enjoyment of his

property would infringe the cited constitutional guaranties. This would be a public use for which private property is subject to appropriation only under the power of eminent domain. Private property may not be confiscated under the guise of police regulations.

Prosecutor is entitled to a hearing and disposition of the application for the variance on the merits.

The judgment of the Board of Adjustment is accordingly reversed, with costs; and the cause is remanded for further proceedings in conformity with this opinion.