Howard T. Hogan, J.
Petitioners seek an order in the nature of a mandamus compelling the State of New York through its Department of Public Works to file certified copies of the descriptions and maps of the Long Island Expressway and the Wantagh Oyster Bay Expressway in the office of the Secretary of State and the County Clerk of Nassau County, as provided by the Highway Law of the State of New York. The respondent State of New York has cross-moved for an order dismissing the petition on the ground that it does not state facts sufficient to constitute a cause of action.
Briefly summarized, the facts upon which this application is based are as follows:
*35 In 1954 the Superintendent of Public Works was authorized by the Legislature to proceed with the construction of the “ Wantagh Oyster Bay Expressway” and the “Long Island Expressway from Guinea Woods Road to the Suffolk County Line in the vicinity of Melville.” Surveys and maps were prepared showing the general routes of these roads, and were then distributed to the Nassau County Planning Commission and to various municipalities in Nassau County as well as to others. However, no inclusive official maps of the entire routes of these expressways were thereafter filed; instead, the Department of Public Works proceeded to file smaller sectional maps and to acquire properties at various points along said routes, with no attempt at continuity, a practice which petitioners describe as “ piecemeal acquisition ”. Although certain of petitioners’ properties lie within the routes shown on the preliminary maps, none of them have been acquired at this time by the State, although it appears certain that eventually they will be taken.
Petitioners contend with good reason that this practice has caused great hardship to them. They state, and it is not denied: (1) that while condemnation proceedings are impending it is impossible to find a buyer who will pay a fair price for the whole property or for the undetermined portion which will not be included in the taking; (2) that the Nassau County Planning Commission, having notice of the preliminary maps and the eventual condemnation, will not issue approval for the development of the property; (3) that the municipalities in which the properties lie refuse to issue building permits for the same reasons; (4) that their properties have been devoted in the past to farming, but by reason of the present tax rates this is no longer a profitable use. Under the circumstances, they can be made to yield no income whatsoever, or, at best, income insufficient to pay their carrying charges; and (5) that petitioners are paying taxes and maintaining their property and will be compelled to do so until the State gets around to acquiring them formally — all this despite the fact that the properties of many owners similarly situated already have been taken.
This, the petitioners argue persuasively, amounts to a taking de facto by the State, without compensation, and a denial of the equal protection of the laws, in violation of their constitutional rights. They assert, also, that the refusal of the respondent Superintendent of Public Works to file maps and descriptions of the property to be taken, despite demands to do so, is arbitrary, capricious and unreasonable.
*36 For the purpose of its cross motion the State has conceded the truth of the above-enumerated’allegations of fact. It maintains, however, that as a sovereign it is under no legal duty, and cannot be compelled, to exercise its power of eminent domain. Hence, its action or failure to act cannot be subject to judicial review. In support of this it cites Soule v. State of New York (6 Misc 2d 892) wherein a Judge of the Court of Claims held (pp. 894-895): “ No person, partnership, corporation, association or other entity can compel the State to appropriate specific property. This is the sovereign’s function which cannot be arrogated by anyone including the claimants.” (This decision is now under review by the appellate courts.)
It is of no comfort to petitioners to be assured that the Planning Board and the various municipalities can be compelled at this time to pass upon and, in a proper case, approve their plans and applications for building permits (Matter of Magnolia Homes Corp. v. Miller, 143 N. Y. S. 2d 231; Matter of Lido Links Homes v. Young, 13 Misc 2d 157; Matter of Aster Agency v. Miller, 13 Misc 2d 947). In Matter of Lido Links Homes v. Young (supra) this court, in directing the issuance of four building permits, said: “ If the Long Island State Park Commission wishes to acquire this property, it should move promptly for an order condemning it, and thus minimize the damage to the petitioner. It cannot, by a mere statement of intent, which binds no one, compel an owner to maintain his property in an unproductive state for an indefinite period”.
Even if the issuance of permits were compelled where could a purchaser be found or a fair price* obtained with condemnation proceedings impending? And where could a prospective developer secure mortgage money?
It cannot be disputed, therefore, that petitioners are suffering a very real hardship which is in no way self-imposed, but arises solely by reason of the Department of Public Works’ practice of acquiring parcels along a proposed roadway piecemeal rather than in one all-inclusive proceeding.
There remains to be determined only the question as to whether the court can compel the respondents to act because, as petitioners contend, since section 11 of article I of the Constitution of the State of New York guarantees them equal protection of the laws of this State, they are entitled to the same treatment as those other property owners, similarly situated, whose lands already have been taken.
The process of building a State highway involves literally thousands of separate and distinct operations which fall into *37 three categories — legislative, legal and engineering. A map showing a preliminary route is prepared in furtherance of legislative action, but the real task of the Department of Public Works begins after the enactment of the statute conferring authority upon it. A complete plan for the entire expressway does not at that moment spring full-grown from the head of the chief engineer. The route is divided into sections and then the work of preparing detailed plans for each section is commenced. Every linear foot must be measured, test borings made, grades computed, etc. The court will not list the various steps, dictated by sound engineering practice, which must be taken before the precise route of each section can be finally determined, contracts let, and road construction commenced. Suffice it to say that each particular section presents individual, distinct engineering problems.
This being true, the Department of Public Works cannot reasonably be expected to wait until every detail of every section has been engineered before commencing work anywhere on a multi-sectioned project. Such delay in an urgently needed improvement would greatly prejudice the public interest. The rights of an individual must yield at such a time. Consequently, the courts should not, even if the power to do so resides in them, compel the respondents to file official maps of every section simultaneously merely because the engineering work on one or more has been completed before that of the rest.
However, the court is constrained to find that in any event the State, as a sovereignty, may not be compelled to acquire the petitioners’ lands, and the cross motion to dismiss the petition therefore is granted.
It is unfortunate that there appears to be no redress for the hardships which the petitioners are suffering, but under the present state of the law and until they are given the right to allege and prove such damages in a condemnation proceeding the courts are powerless to aid them.