119 N.J. Super. 352 (1972)
291 A.2d 588
EAST RUTHERFORD INDUSTRIAL PARK, INC., A CORPORATION OF NEW JERSEY; COSTA ENTERPRISES, A PARTNERSHIP OF NEW JERSEY; AND EAST RUTHERFORD INDUSTRIAL CENTRE, A PARTNERSHIP OF NEW JERSEY, PLAINTIFFS,
v.
THE STATE OF NEW JERSEY; NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, A BODY CORPORATE AND POLITIC; AND HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION, DEFENDANTS. M. VINCENT COSTA t/a TRIANGLE REALTY COMPANY, A PARTNERSHIP OF THE STATE OF NEW JERSEY; KNICKERBOCKER DEVELOPMENT CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, FORMERLY KNOWN AS T.N.J. CONSTRUCTION CO., INC., A CORPORATION OF NEW JERSEY; AND ROYAL DEVELOPERS, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
THE STATE OF NEW JERSEY, NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, A BODY CORPORATE AND POLITIC; HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION; BOROUGH OF EAST RUTHERFORD; EAST RUTHERFORD INDUSTRIAL CENTER, A PARTNERSHIP OF THE STATE OF NEW JERSEY; AND COSTA ENTERPRISES, A PARTNERSHIP OF THE STATE OF NEW JERSEY, DEFENDANTS. SMILA RUTHERFORD, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION AND NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 2, 1972.
*354 Mr. Eugene C. Dinallo, for plaintiffs East Rutherford Industrial Park, Inc., et als. (Mr. Malcolm Blum, on the brief).
Mr. Malcolm Blum, for plaintiffs M. Vincent Costa t/a Triangle Realty Company, et als.
Mr. Gerold Kanengiser, for plaintiff Smila-Rutherford, Inc. (Messrs. Gordon and Kanengiser, attorneys).
Mr. John W. Bissell, for defendant New Jersey Sports and Exposition Authority (Messrs. Pitney, Hardin & Kipp, attorneys; Mr. Ronald L. Davison and Mr. John W. Bissell, on the brief).
*355 Mr. Joseph M. Clayton, Jr., Deputy Attorney General, for defendants State of New Jersey and Hackensack Meadowlands Development Commission (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
Mr. William D. Gorgone, for defendant Borough of East Rutherford.
PASHMAN, A.J.S.C.
These matters are before the court on motion for summary judgment by defendant, New Jersey Sports and Exposition Authority (hereinafter Authority), and complaint and order to show cause why relief should not be granted. Defendants urge that the three complaints in lieu of prerogative writs fail to state a claim upon which relief may be granted.
The material facts are not disputed. Defendants accept as true all relevant factual allegations contained in the plaintiff's pleadings and all inferences that reasonably flow therefrom. Accordingly, these cases are ripe for disposition. R. 4:46-2; Bruno v. Long Branch, 35 N.J. Super. 304, 310 (App. Div. 1955), aff'd 21 N.J. 68 (1956). The parties are generally in accord with respect to the propriety of a summary judgment disposition and recognize that the issues in controversy are legal rather than factual in nature.
In a recent decision, New Jersey Sports and Exposition Authority v. McCrane, 119 N.J. Super. 457 (Law Div. 1971), aff'd 61 N.J. 1 (1972), this court had occasion to observe that the question of whether there has been a taking of property in a given situation "can be a vexing and thorny problem when encountered in the context of a regulation upon land use." In that case, it was held that the mere enactment of a statute and the stipulation by counsel for the Authority as to the projected site for the complex do not constitute a "taking" of property in the constitutional sense. See Wilson v. Long Branch, 27 N.J. 360, 373-375 (1958), cert. den. 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104; Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374 *356 (1971). In this case, the court is confronted with regulatory actions by a state agency in contemplation of the construction of the aforesaid sports complex. The facts are as follows:
The plaintiffs in all three actions consolidated herein for the purpose of summary judgment are possessed of some interest in lands located in the Hackensack meadowlands. Plaintiff Smila-Rutherford, Inc., is the owner in fee title of various premises located therein. In the second action plaintiff East Rutherford Industrial Park, Inc. (hereinafter Park, (is a lessee of approximately 89 acres of land therein owned by the Borough of East Rutherford and leased for a term of 60 years. Among the varous obligations on the part of Park were the securing of a release from the State of its riparian claims and the development of the land which is presently undeveloped. Costa Enterprises and East Rutherford Industrial Centers are sublessees of Park. In the third action the plaintiffs are sublessees of Costa Enterprises, one of the plaintiffs in the second action.
All of the lands in question lie within the special district created by the Hackensack Meadowlands Reclamation and Development Act (hereinafter Commission) (N.J.S.A. 13:17-1 et seq.) and are under the jurisdiction of the Commission. Prior to June of 1971, the respective plaintiffs had commenced to develop their respective parcels and Smila to construct commercial buildings thereon with the intention of leasing the same. To date, several buildings have been completed and are currently occupied. After undertaking the construction of those buildings, the plaintiffs, during the Spring of 1971, filed the necessary applications for a waiver of subdivision regulation with the Commission in accordance with the rules and regulations promulgated by it.
On May 10, 1971, the Legislature of the State of New Jersey enacted the "New Jersey Sports and Exposition Authority Law" granting exclusive jurisdiction upon a site not to exceed 750 acres in the Hackensack Meadowlands to the Authority. N.J.S.A. 5:10-1 et seq. The Authority is *357 possessed with the power of eminent domain and is authorized to construct various facilities for the holding of sporting events, expositions, etc. N.J.S.A. 5:10-2, 6(a), 9.
On May 12, 1972, the New Jersey Supreme Court upheld the constitutionality of that act and declared the Authority to constitute a valid public purpose. New Jersey Sports and Exposition Authority v. McCrane, supra.
In the aforementioned case, attorneys for the Authority stipulated arguendo that the projected site for the complex is the area adjacent to and bounded by Route 3, Berry's Creek, Paterson Plank Road and the New Jersey Turnpike's western spur. Plaintiffs also allege that the Authority has publicly announced the above location, which announcement has been publicized through the various news media.
Prior to the McCrane decision, supra, on or about June 11, 1971, the Commission communicated with the plaintiffs concerning their subdivision applications by the following letter:
The Hackensack Meadowlands Development Commission at a public meeting, on this date, adopted a Resolution directing me to deny your application without prejudice. This action was taken by the Commission after the New Jersey Sports and Exposition Authority had officially informed the Commission that your property may be the site of the Sports Complex.
After receiving this communication, plaintiff Smila-Rutherford, Inc. requested a review of the file with the Commission. In response to that request, Mr. Richard F. Harries, the Chief Engineer of the Commission wrote:
Pursuant to your request, I have reviewed our file and determined that you have fully complied with all the Regulations of the Hackensack Meadowlands Development Commission pertaining to a final plat of a subdivision.
As you are aware, the Hackensack Meadowlands Development Commission has been requested by the New Jersey Sports & Exposition Authority to with hold [sic] any approval on the proposed site for the Sports Complex in East Rutherford. A couple of days *358 ago, you received correspondence from me indicating that your application has been denied without prejudice pending a final determination by the New Jersey Sports & Exposition Authority regarding the site of the Sports Complex.
In addition to denying the subdivision applications of the plaintiffs, Smila-Rutherford on November 17, 1971 was notified by letter to cease construction of a manufacturing and warehouse building which it had undertaken pursuant to a building permit previously granted by East Rutherford.
All complaints allege that the Commission's actions are arbitrary and interfere with the property rights of plaintiffs without due process. It is contended that these acts constitute a taking of property without compensation in violation of the Federal and State Constitutions. Accordingly they seek injunctive relief compelling the approval of the subdivision applications, or in the alternative compelling the defendants to compensate the plaintiffs. Further, they seek damages for the unreasonable delay in approving the applications. Alternatively, the Costa and Park cases seek a declaration to the effect that the premises are not within the jurisdiction of the Hackensack Meadowlands Development Commission.
Smila-Rutherford, in addition to the aforementioned relief, seeks an injunction against the interference with the construction of its warehouse currently under way. Further, this plaintiff petitions for a declaration that the Commission's actions constitute an option to purchase its premises for which it is to be compensated.
The other two actions contain additional demands. All plaintiffs seek damages for the publicizing of the proposed site which they claim has interfered with their ability to rent their premises or otherwise derive profits therefrom. Additionally, the Costa suit contains prayers for reformation or recission of its contracts (leases) with the Borough of East Rutherford and its lessees.
The Borough of East Rutherford has adopted the position of the State, Commission and Authority to dismiss the complaints *359 in the Costa case. However, the matter at hand is not concerned with the relationships arising out of the respective leases of the parties. The Authority's position is concerned only with the actions of the Commission and not with the leases emanating from East Rutherford. Accordingly, the recission and reformation aspects of the Costa case are not dealt with herein. Those issues will be decided another day when East Rutherford formally moves for summary judgment or other relief.
We shall consider the merits of the respective claims. The issues to be decided are whether (1) Smila-Rutherford's claim is barred for failure to comply with the time limitations imposed by R. 4:69-6(a); (2) publicizing of the proposed site for the Sports Complex creates an actionable suit for damages sustained therefrom; (3) defendants' actions constitute a taking in the constitutional sense.

I
The defendants attack the action instituted by Smila-Rutherford on the grounds that it has failed to comply with the time limitations of R. 4:69-6(a) which require the bringing of an action in lieu of prerogative writs within 45 days after the accrual of the right to review. In addition, the Commission argues that the action should have been brought pursuant to R. 2:4-1 which provides for appeals from final determination of state administrative agencies to the Appellate Division.
Smila-Rutherford's complaint was filed on January 17, 1972, some six months subsequent to the initial action by the Commission. A second basis for the complaint relates to the cease and desist order of November 17, 1971. The time for review expired on that claim at the beginning of 1972.
The plaintiff urges the reasoning in the case of Thornton v. Ridgewood, 17 N.J. 499 (1955), wherein Justice Burling permitted a late action on the grounds that the suit sought *360 injunctive and other equitable relief in addition to the review of the municipality's actions. Id. at 510. The plaintiff also seeks equitable relief and poses that aspect of his complaint as grounds for an exception to R. 4:69-6.
Beyond Justice Burling's decision, R. 4:69-6(c) permits the enlargement of the time where the interests of justice so require. The cases of Kent v. Borough of Mendham, 111 N.J. Super. 67 (App. Div. 1970), and Haack v. Ranieri, 83 N.J. Super. 526 (Law Div. 1964), speak in terms of substantial constitutional rights in considering the propriety of granting an extension.
In the present case, the plaintiff alleges constitutional infirmities in the Commission's actions which, if unchecked, may cause considerable harm to it. The question of whether there has in fact been a taking raises serious problems of vital concern to the plaintiff.
Two additional considerations seem to place the equities on the side of the plaintiff. First, the other two actions are not challenged and are properly before the court. Hence, any damage resulting from the plaintiff's tardiness is minimized. Moreover, while neither of the complaints has been brought as a class action, it is apparent that the Commission's determinations will affect a broad class of persons who possess property rights in the area tentatively designated by the Authority as the site for the Sports Complex. As such, the questions are of public concern.
Accordingly, I shall allow Smila-Rutherford's action pursuant to the exception of R. 4:69-6(c). The interests of justice clearly dictate that result. The motion to dismiss the complaint on the ground that the plaintiff has not complied with R. 4:69-6(a) is denied.

II
The plaintiffs contend that the publicity surrounding the proposed site for the Sports Complex has caused substantial damage to them in terms of securing willing purchasers *361 and lessees of their premises. They point in particular to the controversy and widely broadcast announcements concerning the lease agreement entered into between the New York Giants and the State of New Jersey. They further allege that the State and the other defendants have acted with complete disregard for their property rights and have actively and wantonly devalued their lands.
The claim asserted by plaintiffs is governed by the same considerations as in McCrane. The public announcements and publicity surrounding the projected site can no more constitute a taking than a declaration of blight, Wilson v. Long Branch, 27 N.J. 360 (1958); cert. den., 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104; Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374, (1971); Danforth v. United States, 308 U.S. 271, 284-285, 60 S.Ct. 231, 236-237, 84 L.Ed. 230, 238-239 (1939); the filing of a map indicating the actual situs, Bauman v. Ross, 167 U.S. 548, 596-597, 17 S.Ct. 966, 984-985, 42 L.Ed. 270, 290-291 (1897), or the enactment of a statute. McCrane, supra. Injuries resulting from such publicity must be considered incidents of ownership and are damnum absque injuria. Danforth v. United States, supra 308 U.S. at 284, 60 S.Ct. at 236. It may be that if and when the plaintiffs' lands are ultimately purchased or condemned, those injuries may be taken into consideration in awarding damages. See Jersey City Redevelopment Agency v. Kugler, supra. However, that issue will be determined another day.
One last observation on this point is proper. The public has an interest in keeping apprised of impending governmental action. To that end, the press and government are granted untold liberty of expression and reporting under the First Amendment of the United States Constitution. This public interest must take precedence over the possible and speculative injury to property rights resulting from the freedom of expression and the press. In a day when the right of government to suppress and classify information which it deems vital to the nation's security is being seriously *362 argued and challenged, the plaintiffs' alleged incidental damages pale into insignificance. See New York Times Company v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).
For the foregoing reasons, I find that the plaintiffs' allegations grounded on the publicity and announcements concerning the projected site of the Sports Complex do not support a claim upon which relief may be granted. Defendants' motions to dismiss those counts are granted. Accordingly, counts 2, 6 and 10 of the action entitled M. Vincent Costa et al. v. The State of New Jersey et al., Docket No. L 6241-71 P.W., and count 2 of the action entitled East Rutherford Industrial Park et al. v. The State of New Jersey et al., Docket No. L 3825-71 P.W. are hereby dismissed.

III
We now reach the "vexing and thorny" issue to which the court previously referred. The Fifth Amendment to the United States Constitution provides, "nor shall property be taken for a public use without compensation." It has similarly been held that the Fourteenth Amendment of the United States Constitution includes a requirement that states must compensate an owner when it takes private property for a public purpose. Chicago, B. & Q.R.R. Co. v. Chicago, 166 U.S. 226, 241, 17 S.Ct. 581, 586, 41 L.Ed. 979, 986 (1897). The New Jersey Constitution also provides for the same. N.J. Const. (1947), Art. I, par. 20.
The question confronting this court is whether the exercise of the Commission's power to regulate the lands in question contravened the aforementioned constitutional provisions.
No plaintiff disputes the Commission's compliance with the statutory guidelines relating to subdivision in general. N.J.S.A. 13:17-13 and 14 set forth the standards for reviewing subdivision applications and call for the adoption *363 of resolutions by the Commission relevant thereto. In this case, the Commission in its communications with the plaintiffs indicated that it had acted pursuant to such a resolution. N.J.S.A. 13:17-18 governs the waiver of compliance with the subdivision regulations.
In considering the problem of distinguishing between "regulation" and "taking" it is perhaps appropriate to begin with the oft quoted statement of the issue by Justice Holmes in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922):
Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts. The greatest weight is given to the judgment of the legislature but it always is open to interested parties to contend that the legislature has gone beyond its constitutional power.
Looking at the facts in the matter at hand, it is clear that the plaintiffs, by the resolution of the Commission, will be denied the opportunity to improve their lands. This is a temporary condition and is subject to a final determination as to whether the Authority will condemn. When litigation concerning the constitutionality of the Authority is terminated, it will, depending on the outcome of that litigation, act with respect to plaintiffs' property. This action must clearly be expeditious and with dispatch just as the courts have acted expeditiously to adjudicate the various constitutional issues.
One collateral note should be disposed of at this point. Plaintiffs declare that the Authority has definitely determined to condemn or purchase their lands. I find no indication that such a definite determination has been made. A *364 review of the pleadings, briefs and exhibits reveals that the Authority has only stipulated preliminarily that the lands in dispute may comprise the eventual site. The communication of the Commission to the plaintiffs reveals that subdivision applications shall be denied "pending a final determination by the New Jersey Sports and Exposition Authority regarding the site of the proposed project." Moreover, a final determination cannot possibly be made at this juncture. Just as the Giants' lease is subject to the outcome of the litigation involving the Authority, so are any determinations or plans with respect to the site of the Complex subject to judicial review of the act. Accordingly, I find that no definite plans relevant to the plaintiffs' properties have been or can be made; no such inference can properly be gleaned from the facts.
In seeking guidance with respect to the issue at hand from the United States Supreme Court, a less than clear or consistent picture emerges. Clearly, one of the major considerations has been, as Mr. Justice Holmes states, the extent or magnitude of the regulation or taking. Thus in Pennsylvania Coal, supra, the abridgment of the right to mine coal under plaintiff's property was held to constitute a taking. Yet, in other cases, substantial interferences with certain rights were considered not to have constituted a taking. In Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1833), for example, a state statute which destroyed entirely the highly valuable property rights of liquor merchants was held not to constitute a taking. And, in Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), zoning restrictions on the use of property which severely curtailed the value of plaintiff's property were upheld. See, however, United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), holding that regular and frequent flights over private property by low-flying military planes constituted a partial taking for which compensation had to be paid.
*365 The Supreme Court has also discussed the public interest in evaluating such cases. Thus in Panhandle Eastern Pipe Line Co. v. State Highway Comm., 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090 (1935), the court held that a pipeline company could not be compelled to move its lines at its own expense in order to permit the construction of highways over its lines. The court emphasized the lack of any danger to the public from the lines and distinguished cases which had held that railroads were required to eliminate grade crossings at highways to avoid danger to the public. See also, Goldblatt v. Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), holding that an ordinance which eliminated the right of the defendant to excavate gravel and destroyed the beneficial use of the property was passed as a safety measure to avoid a public menace and did not constitute a taking. The appellant therein was held not to have met the burden of proving that the excavating would have a de minimis effect on the public safety.
While the federal cases are somewhat obscure in their consistency, our courts provide a somewhat clearer picture. In Grosso v. Board of Adjustment of Millburn Tp., 137 N.J.L. 630 (Sup. Ct. 1948), an application for a variance by plaintiff was denied by the defendant. The variance would have permitted an automobile showroom and service garage in a single-family residential zone. Pending a determination by the Board of Adjustment, an ordinance was enacted changing the "official map." The effect of the map was to place the plaintiff's property in the midst of the bed of a proposed street. Accordingly, the variance was denied. The court, speaking through Justice Heher, held that:
It was plainly not open to the defendant municipality, in the exercise of the planning power, to dedicate the locus to highway uses on the "official map" and thereby deprive the landowner of all use thereof, without making compensation, until the municipality was prepared to lay out the street. That would constitute a palpable deprivation of the property without due process of law. [at 633]
*366 The Grosso case was subsequently cited in Plainfield v. Middlesex Borough, 69 N.J. Super. 136 (Law Div. 1961). In that case, the municipality sought to purchase the land in question from the plaintiff for the use of public schools. The plaintiff rejected the offering price of the defendant. Thereafter, the municipality enacted an ordinance limiting the use of plaintiff's property for a school, public parks or playground. The effect of the ordinance was to drive down the value of the plaintiff's land and limit his ability to find a purchaser. The court held that while the ordinance conceivably permitted the sale of the land to a private school, the ordinance was confiscatory and constituted a taking if not voided.
While the Grosso case illustrated a case of an outright taking of the plaintiff's property through a zoning ordinance by placing it in a bed of a street which would ultimately be condemned, the Plainfield case exhibited a regulatory action by the municipality which the court held was tantamount to a taking.
Both decisions were cited in the subsequent case of Morris County Land, etc. v. Parsippany-Troy Hills Tp., 40 N.J. 539 (1963). There, the defendant municipality adopted a zoning ordinance which greatly restricted the plaintiff's land. The land was primarily swampland and tideland. The ordinance permitted the following uses:
* * * agricultural uses; raising of woody or herbaceous plants; commercial greenhouses; raising of aquatic plants, fish and fish food (with a one-family dwelling as an adjunct to any of these uses, provided its lowest floor was a specified distance above flood level); outdoor recreational uses operated by a governmental division or agency; conservation uses * * * hunting and fishing preserves; public utility transmission lines and substations; radio or television transmitting stations and antenna towers; and township sewage treatment plants and water supply facilities. [at 545]
Plaintiff sought permission to develop the land which permission was denied. Justice Hall speaking for the court concluded from the evidence that the "almost `freezing' regulations *367 were enacted as a stopgap or interim measure with the expectation or hope that higher governmental authority might well acquire the area as part of a large and much discussed flood control project to benefit the entire Passaic Valley  a project which has not yet come to pass." Id. at 544. The court then went on to hold that the restrictions were far too restrictive and stated:
While the issue of regulation as against taking is always a matter of degree, there can be no question but that the line has been crossed where the purpose and practical effect of the regulation is to appropriate private property for a flood water detention basin or open space. These are laudable public purposes and we do not doubt the high-mindedness of their motivation. But such factors cannot cure basic unconstitutionality. * * * [T]he uses are necessarily so all-encompassing as practically to prevent the exercise by a private owner of any worthwhile rights or benefits in the land. [at 557]
The court in Morris County Land, supra, introduced the concept of "freezing" or stop-gap measures pending ultimate condemnation. But the court noted that no condemnation was in sight. The question whether the same result would be reached where condemnation or a decision to condemn is imminent was not decided. Thus, all of the foregoing cases involved situations where, unlike the present case, the landowners were denied the beneficial use of their lands for unlimited periods of time.
The preceding undecided issue was not long in waiting for clarification. In Lomarch Corp. v. Mayor of Englewood, 51 N.J. 108 (1968), the issue arose in the context of the Official Map Act, N.J.S.A. 40:55-1.32, 1.38. The plaintiff in that case applied to the defendant for approval of its plans to subdivide some 16 acres of land in order to construct single family dwellings. Pending consideration of his application, the defendant, pursuant to N.J.S.A. 40:55-1.32 and N.J.S.A. 40:55-1.34, adopted an ordinance which placed the land on the official map of the city and designated it land reserved for use as a park. The applicable statute provided that no improvements were to be permitted or undertaken *368 on property so designated. However, if, within one year after the approval of the map, the municipality shall not have entered into a contract to purchase or undertaken condemnation proceedings, the owner shall not be bound by the reservation. The effect of the statute, as pointed out by the court, was to freeze for a one year period any attempt to develop the designated land. Id. at 111.
The court held:
Whenever the legislature authorizes municipal action which, if taken, would require, under the Constitution, that just compensation be paid, it follows that if the municipality wishes to exercise that power it must comply with the constitutional mandate and pay. The statute is not constitutionally defective for failure to expressly provide for compensation.
Consonant with the foregoing, we conclude that the "option" for the purchase of land upon the unilateral action of the municipality without any consensual action of the landowner, was statutorily granted to the municipality only upon the implied duty and obligation to make payment of adequate compensation to the landowner for the temporary taking and his deprivation of use. [at 113]
The Lomarch decision was somewhat puzzling. There was little discussion pertaining to previously adjudicated cases in arriving at the conclusion that the act constituted a "temporary taking," although Morris County Land Improvement Co. was cited. Moreover, while it was clear that the defendant was ordered to compensate the defendant on the basis of constitutional mandates, the defendant was not ordered to condemn. Nor was compensation ordered to be paid forthwith. The court merely went on to suggest the manner in which just compensation was to be paid, presumably at a time when the municipality determined to condemn or not.
While it would seem at first blush that the present matter is governed by Lomarch, a second line of cases, relied upon by both plaintiffs and defendants, is relevant to some extent. These cases deal with land which is declared blighted for the purpose of urban renewal.
As previously noted, the case of Wilson v. Long Branch, supra, held that a declaration of blight does not in itself constitute *369 a "taking" for which compensation is required. Wilson recognized that such a declaration tends to lessen the value of the land in question and in effect prevents the sale or improvement of the property. 27 N.J. at 374. However, as subsequently pointed out in the case of Jersey City Redevelopment Agency v. Kugler, supra, 58 N.J. at 380 and 382, Wilson never established the amount of damages or the formula for arriving at just compensation. Similarly, in Lyons v. City of Camden, 52 N.J. 89 (1968), the court noted:
There can be no doubt that a declaration of blight ordinarily adversely affects the market value of property involved. This is unfortunate because in so many instances the physical taking of the property does not occur for a number of years. In the meantime the owner can only wait for that ultimate taking; there is usually no reasonable market otherwise open to him for sale of the property.
In fairness, it is not enough to assure the property owner that at some time, perhaps years hence, he will receive the market value of his property as of the date of the declaration of blight. Meanwhile, he and his family may well be imprisoned economically in the blighted area because he needs the capital invested in the blighted area dwelling in order to purchase a new home elsewhere. Consequently, he must endure the deterioration that afflicts a neighborhood at an accelerated pace following a declaration of blight. [at 99]
If the consequences that accrue from a declaration of blight are so devastating in terms of the value of the land involved, it is indeed difficult to comprehend why in Lomarch the regulation amounted to a taking, while in blight cases, no taking is involved. The fact that in one case the condemning authority may decide not to condemn as stated in Danforth v. United States, supra, cannot serve to distinguish the cases. In Lomarch too, it was possible for the municipality to abandon its intention to condemn the land. Nevertheless, the court ordered compensation.
A distinction must lie in the fact that in one case, the action taken by the sovereign amounts merely to a diminution in value to the property, while in the other the landowner is denied the beneficial use of the land. The Jersey City case points out that:
*370 It might well be that if the Legislature had not acted, this Court in a proper case would have declared that just compensation within the meaning of the Constitution required valuation as of the date of the declaration.
Moreover, in a subsequent Jersey City case, Jersey City Redev. Agency v. Bancroft Realty Co., 117 N.J. Super. 418 (App. Div. 1971), Judge Mintz indicates that in a proper case, that is, where evidence could properly support a finding of affirmative conduct on the part of the condemning authority prior to the institution of condemnation proceedings, a constructive or de facto taking may be found. Id. at 424.
It would seem that the Lomarch line of decisions and the decisions dealing with blight are not so far apart as they first appear. As previously indicated, in the blight context, the owner is not deprived entirely of the beneficial use of his property. Moreover, it is clear that the recent Jersey City decisions signal a finding of a constructive or de facto taking in appropriate circumstances. See In re Elmwood Park Project Section 1, Group B, 376 Mich. 311, 136 N.W.2d 896 (Sup. Ct. 1865); Foster v. Herley, 330 F.2d 87 (6 Cir.1964); City of Cleveland v. Carcione, 118 Ohio App. 525, 190 N.E.2d 52 (Ohio Ct. App. 1963). See also, Board of Educ. of Morristown v. Palmer, 88 N.J. Super. 378, 386-387 (App. Div. 1965), rev'd 46 N.J. 522 (1966), wherein Judge Goldmann found that a proposed highway would deprive the plaintiff school of the beneficial use of its property by encircling the exits, creating noise and interference, and endangering the students. The Supreme Court reversed on the grounds of additional plans not available to the Appellate Division which rendered the complaint speculative. That is not the case here, where there is no speculation as to the effects of the Commission's actions. The decision was that no subdivision would be permitted temporarily.
Relevant to the issue presented by the preceding cases is the defendants' observation relating to the distinction between *371 constitutional provisions for the payment of compensation. Judge Goldmann in Palmer recognized that certain state constitutions, unlike the New Jersey Constitution, require payment for a "taking or damage," rather than a "taking" alone. 88 N.J. Super. at 385. The defendants accurately point out that the former provision has consistently motivated more lenient standards and decisions for the payment of compensation than has the latter. See Bakken v. State, 142 Mont. 166, 382 P.2d 550, 551; Board of Educ. of Morristown v. Palmer, supra 88 N.J. Super. at 385.
While the distinction may serve to explain adjudications in other jurisdictions which seemingly contradict the position taken by the defendants herein, see e.g., Kissinger v. Los Angeles, 161 Cal. App.2d 454, 327 P.2d 10 (Sup. Ct. 1958); Peacock v. County of Sacramento, 271 Cal. App.2d 845, 77 Cal. Rptr. 391, 37 A.L.R.3d 163 (D. Ct. App. 1969); Miller v. Beaver Falls, 368 Pa. 189, 82 A.2d 34 (Sup. Ct. 1951); Hager v. Louisville & Jefferson County P. & Z. Comm., 261 S.W.2d 619 (Ky. Ct., App. 1953), it is obvious that it does not dispose of the problem. It is indeed difficult to ponder with any degree of certainty upon the results of those cases had the constitutional language been otherwise. More importantly, the distinction serves little use in considering the applicability of Lomarch to the present situation.
Returning therefore to the two lines of decisions set forth above, it remains to be decided which of the two should govern the instant situation. While the inquiry thus far has served to reconcile the different approaches taken in the blight and Lomarch cases, it is incumbent upon the court to consider the practical effects of both. The question of when a taking is accomplished in the context of regulatory action generally arises at the point of actual condemnation when damages are to be assessed. The primary exceptions have been situations wherein the regulatory action has deprived the landowner of all beneficial use of his lands for indeterminate lengths of time. Lomarch presents a further exception. In Lomarch, the length of time was fixed by *372 statute to one year. A decision as to damages at that stage of the case was eminently practical and warranted under the circumstances. On the other hand, the blight cases provide authority for just compensation in situations which arise after actual condemnation occurs.
It is apparent that the present case falls into the factual structure of neither Lomarch nor the blight cases. Nor are the Grosso, Plainfield or Morris County cases squarely on point. In the present situation, a determination as to condemnation is imminent. Any delay is not occasioned, as in Grosso and Morris County, by administrative consideration, but appeals within the court system as to the constitutionality of the Complex statute. As previously indicated, this process has been expeditious and timely. As such, a denial of the right to develop their properties continues as to the defendants on a month-to-month basis.
I find that the regulation exercised by the Hackensack Meadowlands Development Commission does not constitute such a deprivation of property rights as to warrant a determination of damages or the ordering of condemnation by the defendants at this time.
And there is no inclination on the part of this court to declare the Commission's actions arbitrary and capricious. Danforth v. United States, supra, provides support for a realistic appraisal of these cases. Just as the Supreme Court in that case recognized that a requirement that the Authority therein condemn a blighted area would be impractical to the extent that the Authority might decide never to redevelop the area in question, so here, it would be ludicrous indeed if a condemning authority were required to permit improvements to properties only to demolish them at some later date. At least in part, this result is posed by plaintiffs as desirable. Kirschke v. City of Houston, 330 S.W.2d 629 (Tex. Ct. of Civil Appeals), app. dism., 364 U.S. 474, 81 S.Ct. 242, 5 L.Ed.2d 221 (1960); Froehlich v. *373 Johnson, 14 Misc.2d 33, 176 N.Y.S.2d 505 (Sup. Ct. 1958) aff'd o.b., 7 A.D.2d 757, 181 N.Y.S.2d 771 (App. Div. 1958); Hunter v. Adams, 180 Cal. App.2d 511, 4 Cal. Rptr. 776 (D. Ct. App. 1960).
Accordingly, in weighing the factors of the magnitude of the loss to the plaintiffs, the time elements involved, the public interest and the discreet exercise of the police power, it is my conclusion that the issues brought before the court at the present time do not constitute a deprivation of property rights requiring a taking or payment of damages by the defendants.
It may well be that the plaintiffs are entitled to compensation for the delay. It may well be that the Eminent Domain Act of 1971 which became effective December 21, 1971 (N.J.S.A. 20:3-1 et seq.) will determine the date as of which compensation, if any, shall be determined. There are three guidelines:
Just compensation shall be determined as of the date of the earliest of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of the commencement of the action; (c) the date on which action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee. [N.J.S.A. 20:3-30]
But in light of the imminence of a final decision and the fixing of the time during which they will be barred from improving or utilizing their properties, that determination must await a later date. The plaintiffs may, at that time, present these issues to the court.
In accordance with the foregoing, counts numbers 1, 5 and 9 of the complaint in the action entitled M. Vincent Costa v. The State of New Jersey et al., Docket No. L 6241-71 P.W.; counts 1, 3 and 4 of the complaint in the action entitled East Rutherford Industrial Park, Inc., et al. v. The State of New Jersey et al., Docket No. L 3825-71 P.W.; and counts 1, 2 and 3 of the complaint in the action entitled *374 Smila-Rutherford Inc., v. Hackensack Meadowlands Development Commission et al., Docket No. L 13797-71 P.W. are dismissed without prejudice.
The motions for summary judgment brought by the New Jersey Sports and Exposition Authority are granted. The motion for summary judgment brought by the Hackensack Meadowlands Development Commission in the Smila-Rutherford action is also granted. While no formal motion was brought by that agency in the other two cases, the complaints are dismissed as against the State and Commission.
Present order.