133 N.J. Super. 350 (1975)
336 A.2d 501
181 INCORPORATED, A CORPORATION OF NEW JERSEY, OAKFORD W. ACTON, JR. AND LAWRENCE W. POINT, PLAINTIFFS,
v.
THE SALEM COUNTY PLANNING BOARD AND THE BOARD OF FREEHOLDERS OF THE COUNTY OF SALEM, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 9, 1975.
*352 Mr. Lawrence W. Point for plaintiffs (Messrs. Acton & Point, attorneys).
Mr. Norman Telsey for defendant Salem County Planning Board.
Mr. George S. Friedman for defendant Board of Freeholders of the County of Salem.
MILLER, J.C.C., Temporarily Assigned.
Plaintiff challenges, as unconstitutional, actions of the Salem County Planning Board compelling it to dedicate to the county a *353 portion of land, owned by it, bordering upon a county road, as a condition precedent to approval by the county of a site plan submitted for the construction of a law office. While such compulsory taking without monetary compensation was held constitutional in Harris v. Salem County Planning Board, 123 N.J. Super. 304 (App. Div. 1973) certification denied 64 N.J. 152 (1973)  but see Battaglia v. Wayne Tp. Planning Board, 98 N.J. Super. 194 (App. Div. 1967)  the present case is apparently the first one to arise wherein a full record has been made. It tests whether the actions of these defendants are justified by that case. For the reasons set forth herein, they are not and a reversal is required.
Plaintiff is the owner of a tract of land in Woodstown, Salem County. The tract abuts on Elm Street (County Road 40) and on U.S. 40 and is irregular in shape. Following its purchase in December 1971 plaintiff applied to the Salem County Planning Board for site plan approval. The site plan review committee recommended approval subject, among other things, to the dedication of 8.25' along its border on Elm Street to be used for a proposed widening of Elm Street from 49.5' to 66' pursuant to the official map. The time of such widening is indefinite.
Plaintiff appealed the decision of the site plan review committee to the county planning board. The board affirmed the decision of its committee over plaintiff's timely objection that such required dedication constituted unconstitutional taking of private property for public use without just compensation. Appeal was next taken to the board of freeholders, which body affirmed the planning board.
A complaint in lieu of prerogative writs was thereafter filed by plaintiff and a motion for summary judgment was heard by Judge Gruccio who, by a letter opinion, remanded the matter for hearing and compilation of a record before the planning board. This letter states, among other matters:
In conducting said hearing, the court calls your attention to the Rational Nexus Rule and to the fact that there is serious doubt in *354 the court's mind as to the constitutionality of banking land without reasonable prospect of use.
Rehearings were held before the planning board and before the board of freeholders. Both reaffirmed their earlier decisions. Plaintiff now renews its application for summary judgment in this court.
The first legal issue presented is whether N.J.S.A. 40: 27-6.6(b), which empowers a county board of freeholders to compel dedication of additional rights of way before approving site plans for land development along county roads, may be reconciled with the constitutional proscriptions against the taking of private property for public use without just compensation. N.J. Const. (1947), Art. IV, § VII, par. 3. In the light of Harris it is clear that constitutional power to require such dedication exists, leaving for decision the constitutionality of the actions of the county in attempting to exercise that power. To understand why they are not valid it is necessary to analyze them in the light of principles laid down in Harris.
Harris held that the requirement of dedication under N.J.S.A. 40:27-6.2(b) is constitutional whenever there is a demonstrable "rational nexus" between the amount of land so dedicated and "the needs created by and benefits conferred upon the subdivision." Harris, supra, 123 N.J. Super. at 307. Although Harris involved a minor subdivision and the instant case a site plan approval, the two are in pari materia, involving comparable sections of the same statute, N.J.S.A. 40:27-6.2(b) (Harris) and N.J.S.A. 40:27-6.6(b) (the instant case). The constitutionality of the County Planning Act generally (N.J.S.A. 40:27-1 et seq.) was held to rest upon the same legal principles as the Municipal Planning Act, N.J.S.A. 40:55-1.1 et seq. It is from the cases construing parallel provisions in the Municipal Planning Act that the "rational nexus" test is drawn. Having so held, the court remanded Harris to the planning board for a full administrative hearing to determine *355 "whether the requested minor subdivision justifies the compelled dedication, or whether the county be relegated to a possible future condemnation." Harris, supra at 309.
It is significant that Judge Gruccio not only indicated that he had some doubts concerning the validity of the practice of "banking land," as he called it, but went on to suggest to the board:
Further comment is necessary, that serious consideration shall be given by the County and the Planning Board to an amendment of the Ordinance providing for hearings and a due process method whereby the determinations to be made by the Planning Board under Harris and this case may be made.
An analysis of what was done in compliance with this requirement of Judge Gruccio is revealing.
The original site plan review resolution was adopted January 21, 1970 by the board of freeholders pursuant to N.J.S.A. 40:27-6.6. It provided in § 8 that, "As a condition to the approval of a site plan, the planning board shall require the dedication of additional right of way * * *" (emphasis supplied). It was this mandatory feature to which plaintiff objected. On December 19, 1973, presumably in response to Judge Gruccio's mandate, the resolution was amended to include in § 7 ("Appeals") the following paragraph:
If upon an appeal the applicant clearly demonstrates that a requirement of additional right-of-way bears no rational nexus to the needs created by and benefits conferred upon his site development, the reviewing board shall relieve the applicant from any requirement to dedicate additional right-of-way along an existing road. In addition to any other evidence presented, the reviewing board at such hearing shall consider the amount of additional traffic along said road to be caused by the site development, any adverse effect upon traffic flow along said road caused by vehicles entering and leaving the proposed development, and whether the proposed additional road width would increase ease and safety for vehicles entering and leaving the site and for through traffic on said road. The review board shall also consider the County Master Plan for roads and transportation and shall consider evidence of both existing and anticipated traffic patterns along said road.
*356 The compulsory dedication requirement of § 8 remained unchanged.
The thrust of this amendment is to place upon the landowner the burden of avoiding a blanket policy of compulsory dedication, probably because of language in Harris stating (at 309), "There is nothing unreasonable in requiring a subdivider to bear the burden of coming forward with proofs when seeking relief." But this language must be viewed in its proper perspective. In condemnation cases the statute requires an affirmative determination by the policy-making body, followed by negotiation, before condemnation proceedings may be instituted. See N.J.S.A. 20:3-6 and the former law to the same effect, N.J.S.A. 20:1-1, repealed by L. 1971 c. 361, § 49. The same policy is set forth in the Official Map Act, N.J.S.A. 40:55-1.32. See Lomarch Corp. v. Mayor of Englewood, 51 N.J. 108 (1968). (The effect of Lomarch is to include the statutory intent, by construction, in the provisions of the County Official Map Act, N.J.S.A. 40:27-6).
There is clearly spelled out in this statutory framework the intent of the Legislature that the first move to expropriate land must be made by the public body before a landowner may be adversely affected. This first move may be a resolution calling for the exercise of the powers of eminent domain; it may be by the adoption of a master plan or official map, but by whatever name it may be called, it must define for the public, and particularly those who may be affected by it, the specific intent of the public body and must be specific with respect to the land in question. Only then, when the property owner knows what he has to meet, can he take steps to meet it. Read in the light of this background, as is pointed out in Harris, it is not improper to then require the landowner to come forth with his proofs. By this standard the county's actions were insufficient.
The vice in the county's resolution is that it sets up a blanket policy of taking frontage along every county road *357 without regard to present need, imminency of proposed use or, indeed, of any standard whatsoever. To then expect a landowner to prove himself outside the perimeter of so nebulously defined an area makes it impossible for him to meet his burden. A perusal of the record in this case and an analysis of the testimony which was necessarily adduced by the plaintiff illustrates the predicament of the landowner.
In order, therefore, for the county to place upon the landowner the burden of proof imposed upon him by Harris, the county must first make its position clear. This must be done, not in generalities, but in specifics applicable to the land sought to be obtained. While obviously there should be the adoption of an official map and a master plan, this is not enough. There should be, at the bare minimum, a proposal for the imminent use of the land, not a mere "banking" for unscheduled future use. While it is true that road appropriations are made on an annual basis it is also true that plans for road work involve "lead time." If the county does not intend to use the land proposed to be taken within such "lead time," to take it without compensation merely because opportunity presents itself runs afoul of the Constitution.
The planning board felt that there was a sufficient rational nexus between the proposed use and the widening in futuro of Elm Street to justify the requirement of a compulsory dedication. This finding constitutes error.
"Rational" means a general principle of law or warranted presumption that supports a conclusion, explains a fact or validates a cause of action. It implies satisfaction to or chiefly activated by reason. "Reasonable" carries a much weaker implication of the power to reason. Webster's Third New International Dictionary (unabr. ed.) (1963). The word "nexus" is derived from the Latin "nectere" meaning "to bind" and signifies a connection or a connected group or series. Id. In the framework of this case, a rational nexus means an interconnection between two events, direct and substantial in nature and clearly and logically linked together. *358 It signifies a connection more definitely and clearly established than a "reasonable connection." It cannot be used to portray an indirect, remote or vague relationship.
The term "rational nexus" appears to have become embedded in our jurisprudence with its use by the Supreme Court in Longridge Builders v. Princeton Tp. Planning Board, 52 N.J. 348, 350 (1969). In that case the planning board sought to impose upon a developer the requirement of paving a dedicated but unimproved right-of-way extending from a boundary of plaintiff's subdivision 361 feet to an existing road. The court did not pass upon the question of whether a planning board could compel a developer to provide off-site improvements. In limiting the power of a planning board to compel improvements the court said:
It is clear to us that, assuming off-site improvements could be required of a subdivider, the subdivider could be compelled only to bear that portion of the cost which bears a rational nexus to the needs created by, and benefits conferred upon, the subdivision. [at 350]
Clearly, this case does not stand for the proposition that a developer may be compelled to dedicate lands on a routine basis. Moreover, the authority cited in Longridge is Lake Intervale Homes Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 441-443 (1958). This citation is significant because Lake Intervale involved the question of what portion of the cost of certain improvements, in that case water, could be imposed upon a developer. The court held that an ordinance which sought to impose upon a developer the entire cost of such improvements, where other property owners would ultimately derive benefit therefrom, could not be sustained. Here, again, the court was dealing, not with a grant, but with a limitation of power.
In Brazer v. Mountainside, 55 N.J. 456, 465-466 (1970), the court said that statutory and ordinance provisions for a compulsory dedication could only be valid where the proposed street bears a realistic relation to or is reasonably made *359 necessary by the subdivision. See also Princeton Res. Lands v. Princeton Tp., 112 N.J. Super. 467, 474, 475 (App. Div. 1970), holding that a developer may not be compelled to donate land to increase the width of an existing abutting street.
The constitutional basis of the nexus requirement is neither strange nor novel. It appears in the earlier zoning cases, for instance, Grosso v. Millburn Tp. Adjustment Bd., 137 N.J.L. 630, 633 (Sup. Ct. 1948), which held that "lands may not be taken for highway use, presently or in futuro, without just compensation." Grosso, supra at 633. See also Lomarch Corp. v. Mayor of Englewood, 51 N.J. 108 (1968). And Battaglia v. Wayne Tp. Planning Board, 98 N.J. Super. 194 (App. Div. 1967), is particularly apposite since, like the instant case, it involved a site plan approval:
Unlike the case of a land subdivision, no new streets are necessitated by the plaintiff's planned use; there are no purchasers to whom the cost of the improvements can be passed, and plaintiff's land receives no discernible benefit from compliance with the imposed conditions. [at 200]
Had Battaglia not applied for official action, Wayne Township could not have imposed upon him the obligations sought to be imposed. The same logic is inescapable here.
In short, for the nexus test to apply, thus making a compulsory dedication constitutionally valid, the nexus must be rational. This means it must be substantial, demonstrably clear and present. It must definitely appear that the proposed action by the developer will either forthwith or in the demonstrably immediate future so burden the abutting road, through increased traffic or otherwise, as to require its accelerated improvement. Such dedication must be for specific and presently contemplated immediate improvements  not for the purpose of "banking" the land for use in a projected but unscheduled possible future use. In this respect the language in Mansfield & Swett v. West Orange, 120 *360 N.J.L. 145 (Sup. Ct. 1938), remains as timely today as when it was first written:
* * * Nor do we think that increased traffic hazards constitute a valid objection to the development. It is not a sound argument that the subdivision will attract additional dwellers, and thereby increase the volume of traffic and create the need for additional police supervision. These are mere incidents of municipal growth. [at 161; emphasis supplied]
Viewed by these standards the actions of the planning board in this case cannot be sustained. The record clearly discloses that (1) Elm Street has a capacity of 400 vehicles an hour (the board's claims of 200 an hour are unpersuasive); (2) present use is but 95 vehicles an hour; (3) use of the land in question for a law office generates additional vehicular movements totalling 17 a day. While the record does contain generalities and projections for possible future development over the next 15 years which might just indicate a need for future improvement of Elm Street by then, no action is planned or projected in the foreseeable future. Further, some  possibly the majority  of the projections are bottomed, not on the plaintiff's use of its lot, but upon the general growth of the community and county, including possible traffic increase caused by the completion of the Commodore Barry Bridge over the Delaware River, miles from the site in question. The sole proven impact of plaintiff's proposed use upon the road was limited to the traffic count set forth above. This was not a hypothetical, theoretical projection but actual measured figures.
The county urges the proposition that property fronting a street is inherently benefited by a widening of such street. Significantly, the authority cited, 11 McQuillin, Municipal Corporations (3 ed. 1964), § 32.26 at 359, 360, does not depend upon a New Jersey authority, and it is doubtful if the statement could be supported as a flat proposition. In this case there is no evidence of any proposed widening. Moreover, when a street is widened such benefit, if any, *361 must be taken into account when damages are assessed. See N.J.S.A. 40:49-16.
While it is obviously true that plaintiff's use increases the burden on Elm Street to some minuscule degree, so, too, the purchase of an additional car by a one-car family doubles the impact of that family upon the highway system. While in a technical sense a nexus may be thus created, little argument is needed to show that it is not rational. Certainly it was not rational in the instant case.
The above findings lead to the conclusion that the actions of the planning board cannot be sustained. However, the board is not without remedy. Since the statute has survived the constitutional test, it follows that the county's incorrect action was requiring compulsory dedication without compensation. There is nothing wrong with the county taking this land pursuant to the statute, provided it pays a fair price therefor. This is precisely the situation presented by Lomarch Corp. v. Mayor of Englewood, 51 N.J. 108, 113 (1968). Lomarch holds that N.J.S.A. 40:55-1.32 and N.J.S.A. 40:55-1.38, which permit a municipality to deprive a landowner of the use of his lands under the circumstances set forth therein, must be construed to impose upon the municipality the duty of making payment of adequate compensation. The same is true herein, and it is held that N.J.S.A. 40:27-6.6 and N.J.S.A. 40:27-6.2 permit a compulsory dedication but, on the same rationale as Lomarch, must be construed to require the payment of adequate compensation. If the nexus be rational and meets the tests set forth herein, no compensation need be paid since the benefits to the landowner supply the compensation. If the nexus be not rational, as in the instant case, monetary compensation must be paid if the lands are desired for "banking" purposes.
In this respect the judgment of the planning board, within the frame of reference given it by the freeholders, must be determinative. The board may well feel that, with the cost *362 of land constantly rising, the public interest would best be served by obtaining the land at present prices. It might also conclude to wait until the need becomes more imminent. This decision is the board's and not the court's.
Since the case must go back, the board of freeholders should revise the site plan (and subdivision) standards, eliminating automatic dedication and limiting compulsory taking to those occasions when it meets the rational nexus test and the county's proposed use is specific and imminent. For example, most (although certainly not all) minor subdivisions will probably be found not to meet the rational nexus test as defined herein.
The actions of the planning board are reversed. The case is remanded to the planning board to determine whether the land in question shall be purchased or not. If it is decided not to purchase and plaintiff has delivered a deed, title shall be returned to it. If it is decided to purchase the land, plaintiff shall deliver a deed upon tender to it of fair compensation. Jurisdiction is retained. No costs.