211 N.J. Super. 290 (1985)
511 A.2d 740
NEW JERSEY BUILDERS ASSOCIATION, A CORPORATION NOT FOR PROFIT OF THE STATE OF NEW JERSEY, BUILDERS ASSOCIATION OF SOMERSET AND MORRIS, A CORPORATION NOT FOR PROFIT OF THE STATE OF NEW JERSEY, AND MILL RACE LIMITED, A PARTNERSHIP, PLAINTIFFS,
v.
THE MAYOR AND TOWNSHIP COMMITTEE OF BERNARDS TOWNSHIP, SOMERSET COUNTY, DEFENDANTS.
Superior Court of New Jersey, Law Division Somerset County.
Decided February 25, 1985.
*291 Wayne J. Peck for plaintiffs (Hutt, Berkow, Hollander & Jankowski, attorneys).
Roy E. Kurnos for plaintiff Mill Race Limited (Murphy, Kurnos & Nish, attorneys).
Howard P. Shaw for defendant (Farrell, Curtis, Carlin & Davidson, attorneys).
D'ANNUNZIO, J.S.C.
At issue is the validity of Bernards Township's off-tract improvement ordinance. Resolution of this issue requires construction of N.J.S.A. 40:55D-42, a section of the Municipal Land Use Law (MLUL) which authorizes municipalities to require developers to contribute to certain off-tract improvements.
The ordinance, no. 672, establishes a program to determine the amount which must be paid by a developer for off-tract improvements as a condition of preliminary subdivision or site plan approval. The ordinance is not a model of clarity. A complete understanding of the program and its implications requires that it be read with the traffic circulation and utility service plan elements of defendant's master plan and with the township's off-tract improvements program as well as the appendices *292 made a part of the ordinance. At the outset the court's discussion of the ordinance will be limited to off-tract street improvements though the ordinance also includes drainage facilities.
The township's area is 24 square miles. Within its boundaries are 16 miles of state highways, 21 miles of county roads and 77 miles of township streets and roads. Interstates 287 and 78 traverse the township. In 1982, as a predicate to the adoption of the ordinance, the township determined that full development would require the improvement of certain roads within the township. The roads to be improved are listed in table 1 of the appendix to the ordinance and include county as well as township roads. The township further determined that the requisite improvements will cost $20,000,000 at 1982 prices. Utilizing the Trip Generation Handbook published by the Institute of Transportation Engineers the appendix to the ordinance establishes trip generation rates for six basic uses: single family, multi-family, senior citizen, general office, professional office and retail. For example, a single-family residence will generate 1.1 p.m. peak-hour trips. Specifically it will generate 0.7 arrivals and 0.4 departures. Similarly, a general office will generate 1.63 p.m. peak-hour trips per 1,000 square feet. A development of 100 single-family residences will generate 110 p.m. peak hour trips. The township determined that at full development 23,700 p.m. peak-hour trips per day will be generated. It was further determined that development in place in 1982 generated 7,450 p.m. peak-hour weekday trips. Utilizing simple mathematics the township determined that the share of the cost of the roadway improvement program to be borne by general
 township revenues is 31.4% 7,450
 ( ______ )
 23,700
and the share to be borne by future developers is 68.6%. The estimated cost for the improvement of municipal roads is $14,800,000. The general revenue share, i.e., the share allocated *293 to existing development is 31.4% or $4,547,000. The balance of $9,933,000 is allocated to new development as is the entire projected cost of improvements to county roads which are to be made by the township in the amount of $5,520,000. Therefore, the total cost to be borne by future development is $15,453,000. Dividing that amount by the 16,250,000 p.m. peak hour trips to be generated by all future development yields an assessment of $951 per trip generated by all new development. The developer of 100 single-family homes resulting in 110 trips must pay Bernards Township $104,610 as his share of the cost of the transportation network improvement program. This assessment would be in addition to the cost of off-tract improvements necessitated or required by the new development where no other property owners receive a special benefit.
In a non-residential context the builder of four retail stores of 1,000 square feet each would pay an assessment of $54,770.60 because each 1,000 square feet of retail space generates 14.40 p.m. peak-hour trips.
Plaintiff argues that this program is not authorized by the statute and is ultra vires. Resolution of that issue requires construction of N.J.S.A. 40:55D-42 (hereinafter referred to as § 42). That section was adopted in 1976 as part of the MLUL and provides:
The governing body may by ordinance adopt regulations requiring a developer, as a condition for approval of a subdivision or site plan, to pay his pro-rata share of the cost of providing only reasonable and necessary street improvements and water, sewerage and drainage facilities, and easements therefor, located outside the property limits of the subdivision or development but necessitated or required by construction or improvements within such subdivision or development. Such regulations shall be based on circulation and comprehensive utility service plans pursuant to subsections 19b.(4) and 19b.(5) of this act, respectively, and shall establish fair and reasonable standards to determine the proportionate or pro-rata amount of the cost of such facilities that shall be borne by each developer or owner within a related and common area, which standards shall not be altered subsequent to preliminary approval. Where a developer pays the amount determined as his pro-rata share under protest he shall institute legal action within 1 year of such payment in order to preserve the right to a judicial determination as to the fairness and reasonableness of such amount. [Footnote omitted]
*294 A brief review of the state of the law regarding developers' responsibility for the cost of off-tract improvements will be beneficial as the starting point for construction of § 42.
In Divan Builders v. Planning Bd. of Tp. of Wayne, 66 N.J. 582 (1975) the Court for the first time held that the Municipal Planning Act of 1953, specifically N.J.S.A. 40:55-1.21, authorized municipalities to require a developer to make off-tract improvements as a condition of land development approval. The specific language of the Court made it clear that requiring an off-site improvement could be justified only if there was a relationship between the subdivision and the need for the improvement. The Court's language expressing its holding was:
In our judgment, the constitutional and legislative direction to resolve questions of municipal authority broadly in favor of the local unit, compels the conclusion that, by necessary implication, N.J.S.A. 40:55-1.21 empowers a planning agency to require both on-site and off-site improvements of the physical character and type referred to in N.J.S.A. 40:55-1.20 and N.J.S.A. 40:55-1.21, including off-site improvements made necessary by reason of the subdivision's effect on lands other than the subdivision property, provided that the agency acts pursuant to a valid local ordinance containing suitable standards governing construction and installation of improvements. [at 596]
Having decided that off-site improvements may be required the Court devoted the balance of its opinion to methods of allocating the cost of an off-site improvement when the improvement benefits other properties in addition to the subdivision. In fashioning a general rule of cost allocation in such cases the Court borrowed from its prior opinions in Longridge Builders, Inc. v. Planning Bd. of Princeton Tp., 52 N.J. 348 (1968), and Brazer v. Borough of Mountainside, 55 N.J. 456 (1970).
The planning board in Longridge required the applicant to pave an existing but unimproved road right-of-way which extended from the northern boundary of the subdivision 361 feet north to an existing public street. The trial court and the Appellate Division held that the planning board had no power to require off-site improvements. The Supreme Court did not *295 decide that issue. Instead it held that the failure of the ordinance to establish "standards by which the cost of off-site improvements might be apportioned to the subdivider on the basis of the benefits to the subdivision" was fatal. Longridge, supra, 52 N.J. at 350. The court further stated:
It is clear to us that, assuming off-site improvements could be required of a subdivider, the subdivider could be compelled only to bear that portion of the cost which bears a rational nexus to the needs created by, and benefits conferred upon, the subdivision. It would be impermissible to saddle the developer with the full cost where other property owners receive a special benefit from the improvement. [Ibid]
In Brazer the planning board required the subdivision applicant to reserve a strip 50 feet wide for the future extension of an existing public road beyond its cul-de-sac. The subdivision in question bordered the cul-de-sac and reservation of the strip would have eliminated one of the two proposed lots. Brazer is not an off-site improvement case. However the Court held that the planning board could not require dedication of the strip because a subdivider may be compelled only to assume a cost "`which bears a rational nexus to the needs created by, and benefits conferred upon, the subdivision'." Brazer, 55 N.J. at 466 quoting Longridge, 52 N.J. at 350. In its decision the Court discussed N.J.S.A. 40:55-1.20, now repealed, which authorized planning boards to require certain types of improvements. The Court held that the statute applied only where the proposed improvement is necessary to serve and benefit the subdivided lots. Interestingly the Court then held that the applicant had no right to subdivide lots off the existing cul-de-sac, therefore the extension of the existing public street onto the applicants lands was necessary to serve the proposed lots.
Divan, Brazer and Longridge clearly and carefully limited and restricted the extent to which municipalities may require improvements to be paid for entirely or partially by the applicant for development. Those limitations and restrictions are consistent with other judicial decisions in this field. See Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423 (1958); Princeton Res. Lands v. Princeton Tp. Plan. Bd., 112 *296 N.J. Super. 467 (App.Div. 1970), certif. den. 57 N.J. 291 (1971); Harris v. Salem County Planning Bd., 123 N.J. Super. 304 (App.Div. 1973); 181, Incorporated v. Salem Cty. Planning Bd., 133 N.J. Super. 350 (Law Div. 1975), aff'd in part, rev'd in part 140 N.J. Super. 247 (App.Div. 1976); cf. Lomarch Corp. v. Mayor of Englewood, 51 N.J. 108 (1968) (one year reservation of land for public parks and playground was a taking which required compensation); Battagalia v. Wayne Township Planning Board, 98 N.J. Super. 194 (App.Div. 1967) (reservation of a 50 foot strip for future municipal road and posting of a bond for its improvement constitutes a taking without compensation).
The Municipal Land Use Law was adopted in 1976 against this background of judicial interpretation of the Municipal Planning Act of 1953. The Legislature is charged with knowledge of this body of judicial decisions. Barringer v. Miele, 6 N.J. 139 (1951). It is reasonable to expect that a major legislative departure from those limitations and restrictions on municipal power would be stated clearly and unequivocally. But that has not occurred. In fact, in one sense, § 42 is more restrictive than those sections of the Municipal Planning Act which Divan construed as authorizing the requirement of off-tract improvements. Divan held that a municipality, as a condition of subdivision approval, could require off-tract improvements of the character and type specified in N.J.S.A. 40:55-1.20 and -1.21. The latter section specifically describes certain improvements which may be required but its final clause states "and such other subdivision improvements as the municipal governing body may find necessary in the public interest." The specifically described improvements in § 1.21 are arguably within the specific language of § 42 authorizing "street improvements and water, sewerage and drainage facilities, and easements therefore...." However, § 42, unlike its predecessor § 1.21, does not contain an omnibus grant of authority to require "such other subdivision improvements as the municipal governing body may find necessary in the public interest."
*297 Furthermore, the language of § 42 is consistent with the limiting and restricting language of pre-1976 judicial decisions. The statute authorizes the municipality to require a developer to pay his "pro rata share of the costs of providing only reasonable and necessary street improvements and water, sewerage and drainage facilities and easements therefore located outside the property limits of the subdivision or development but necessitated or required by construction or improvements within such subdivision or development." Emphasis supplied. The statute also authorizes a developer to pay the amount required under protest and institute legal action to preserve the right to a "judicial determination as to the fairness and reasonableness of such amount." Emphasis supplied. An off-tract improvement cannot be required unless it is "necessitated or required" by the subdivision or development. Necessitate is defined as to make necessary; to make inevitable; to involve as an essential element or inevitable outcome or unavoidable consequence. Webster's Third New International Dictionary. Require is defined as including a demand or necessary or essential; to make indispensable. Ibid. Not only is the language utilized by the Legislature, language of limitation and restriction, but it is similar and in some cases identical to the language expressed in the previously discussed judicial decisions.
Section 42 expresses the legislative intent that before an off-tract improvement can be required as a condition of approval of a plan for development, the relationship between the development and the need for the improvement must be clear, direct and substantial. Defendant's ordinance 672 and its off-tract improvement program do not require this relationship. Instead the township has substituted the premise that all future development will impact the 22 township roads, the 17 intersections, the seven county roads and the two county bridges specified in ordinance 672 without regard to the location of each development and its particular characteristics. A new development *298 in the southern tip of the township is required to make a financial contribution to the improvement of the intersection of North Maple Avenue with State Highway Route 202 approximately nine miles to the north. The ordinance's allocation of the cost of future improvements to the township's transportation network does not rest upon a clear, direct and substantial relationship between a particular development and the improvement in question, i.e., a relationship which makes the need for improvement of an existing facility apparent, or the need for a new facility manifest. Instead it rests on a generalized hypothetical township-wide model and the impact of full development.
Therefore, it is beyond the authority granted by the MLUL and is ultra vires.
Having found the ordinance to be beyond the statutory grant of authority it is not necessary to consider plaintiffs' argument that the ordinance is unconstitutional and arbitrary.
The ordinance also establishes a method for allocation of the cost of off-tract drainage control facilities. The township's position is that § 511 of its land development ordinance requires a developer to prevent an increase in the rate of runoff from his property as a result of the development. In effect, the developer must provide on-site runoff control facilities. According to the township those portions of ordinance 672 which deal with off-tract drainage facilities are voluntary in that it is the developer's option to provide either on-site or off-site facilities. In light of defendant's concessions it is unnecessary to consider the validity of the off-tract drainage program at this time.[1]
NOTES
[1] The township also resolved an ambiguity in the formula it adopted to allocate the costs of off-site drainage facilities. The numerators in the allocation fraction refer to the increase in runoff created by the development and not the total runoff coming from the land.